Filed 3/25/13  In re J.G. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re J.G. et al., Persons Coming Under the Juvenile Court Law. | |
| | D062670 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ13627E-F) |
| v. | |
| AMBER G. et al., | |
| Defendants and Appellants. | |

APPEALS from judgments of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Amber G. and Juan G. (together, the parents) appeal judgments declaring their son, J.G., and Amber's son Isaiah (together, the minors), dependents of the juvenile court and removing them from parental custody.  The parents challenge the sufficiency of the evidence to support the court's jurisdictional findings and dispositional orders.  Juan also contends the court erred by requiring his visits with J.G. to be supervised.  We affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2007, Amber's four older children became dependents of the court based on findings Amber and the children's father, Rodolfo L., exposed them to domestic violence. After receiving 12 months of reunification services, Amber failed to reunify with these children. The court issued custody orders awarding Rodolfo sole legal and physical custody and requiring Amber's visits to be supervised. Amber did not, however, maintain contact with the children.

In 2009, Amber gave birth to Isaiah,[2] who tested positive for methamphetamine. The San Diego County Health and Human Services Agency (Agency) filed a petition in the juvenile court, alleging Isaiah was at substantial risk of harm because Amber had an extensive history of substance abuse and admitted using methamphetamine during her pregnancy. Amber's criminal history dated to 1995, and included assault, battery, theft and drug-related crimes. The court sustained the allegations of the petition, declared Isaiah a dependent, removed him from parental custody and placed him in foster care.

Amber was incarcerated during part of the reunification period, but once released from custody, she successfully participated in drug treatment and completed a parenting class. She began living with Juan and was pregnant with her sixth child. Amber was visiting Isaiah, and attending therapy and Narcotics Anonymous meetings. She maintained her sobriety for one

---

[1]     Counsel for the parents have mischaracterized the record by stating facts favorable to their clients while omitting unfavorable facts. We remind them of their duty, as officers of the court, to accurately portray the facts in accordance with rules of appellate procedure. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688-689 [record must be viewed favorably to the juvenile court's determination].)

[2]     Isaiah's father, Benjamin S., is not a party to this appeal.

year and the social worker recommended the court place Isaiah with her. For the next six months, Amber received family maintenance services, was in compliance with the conditions of her parole and remained sober. She gave birth to J.G. in August 2011. Three months later, the court terminated dependency jurisdiction as to Isaiah.

In July 2012, Agency filed a petition in the juvenile court as to Isaiah under Welfare and Institutions Code section 300, subdivision (b)[3] alleging he had suffered, or was at substantial risk of suffering, serious physical harm as a result of the parents' failure or inability to adequately supervise or protect him. Specifically, the petition alleged Isaiah sustained injuries to his head and bruises to various parts of his body when Amber left him inadequately supervised and he climbed on a dresser that fell on him. This dresser had fallen on J.G. and injured him three months earlier, and Amber failed to secure the dresser to ensure the minors' safety. Agency also filed a petition as to J.G. under section 300, subdivision (j) alleging he was at substantial risk of harm as a result of Isaiah's abuse or neglect.

According to a detention report, Agency had received a referral that Isaiah had bruises on his body and had "busted open his head" when a dresser fell on him. The investigating social worker noticed Isaiah had a bandage and swelling above his eye. He also had three circular facial bruises, a cluster of bruises on his hip and multiple bruises on his legs. An evaluation and X-rays at the hospital showed no current fractures, but there was evidence of an old, healed fracture of Isaiah's wrist. The doctors were concerned about medical neglect, given Amber's delay in seeking medical attention for Isaiah and his multiple bruises in various stages of healing.

---

3        Statutory references are to the Welfare and Institutions Code.

The social worker learned that the same dresser that had fallen on Isaiah had previously fallen on J.G. when Isaiah climbed on it. J.G. sustained no injuries, and Amber promised the in-home services worker she would secure the dresser. She failed to do so, however, resulting in Isaiah's injuries. Amber did not seek medical attention for the cut to Isaiah's head or his many bruises. She said she was napping when the dresser fell and did not take Isaiah to the doctor because by the time she woke up, he seemed fine. Amber was unable to explain the multiple bruises on Isaiah's body other than to say he climbed on everything and was always falling.

The court made prima facie findings on the petitions and detained the minors in out-of-home care. It ordered liberal, supervised visits for the parents.

According to a report prepared for the jurisdiction and disposition hearing, a five-year restraining order had recently been issued against Amber, protecting Rodolfo and their four children. Juan had a lengthy criminal history, including multiple arrests for drug-related crimes and for carrying a loaded firearm. He was currently on probation and was a registered narcotics offender.

The social worker expressed great concern about the welfare of two-year-old Isaiah and 11-month-old J.G. because they were nonverbal and unable to protect themselves. Isaiah's extensive injuries were suspicious for nonaccidental trauma. Amber had a history of parental neglect and drug use, and she failed to reunify with her four oldest children. Two months before the jurisdiction and disposition hearing, Amber tested positive for methamphetamine.

According to an addendum report, the social worker received a telephone message from Amber late one night, saying she was concerned that Juan might be using drugs again because

4

he had gone out with a friend who was a methamphetamine dealer. Amber was afraid because Juan's family reported that he became violent when he used drugs. She said Juan had been more aggressive with her recently and they had been fighting often. Amber asked the social worker to have Juan drug tested.[4]

The social worker asked the parents to drug test because she wanted them to begin unsupervised visits with the minors if the tests were negative. The social worker informed the parents that a failure to test would be considered a positive test. The parents did not show up for their drug tests.

By August 2012, the parents had improved the condition of their home by installing safety locks on drawers and cabinets, and moving chemicals and bleach to the garage. They had strapped a desk to the wall, covered the electrical outlets, tied the curtains back and secured the bedroom dresser to the wall.

Amber was visiting the minors two or three times a week, and Juan was visiting them once a week. Most of the time, the parents arrived late. The visits went well. The minors' caregiver invited Amber to her home for additional visits but Amber declined the invitation. In September 2012, the caregiver asked to have the minors removed from her home because she believed the parents were being disrespectful by declining the opportunity for extended visits and failing to drug test, which meant they could not begin unsupervised visits.

The social worker reported that although the parents had taken some action by child-proofing their home and going to parenting classes, they continued to deny having done anything wrong. Their failure to drug test suggested they continued to use drugs, and thus, the

---

[4] Amber later told the social worker that Juan came home that night and everything was fine.

5

social worker recommended against unsupervised visits with the minors. Amber eventually submitted clean drug tests on two occasions.

At a contested jurisdiction and disposition hearing, the court received in evidence Agency's reports. Although the social worker was present, none of the parties called her to testify. After considering the evidence and arguments of counsel, the court sustained the allegations of the petitions, declared the minors dependents, removed them from parental custody and placed them in out-of-home care. The court gave the social worker discretion, with the concurrence of minors' counsel, to begin unsupervised visits and a 60-day trial visit.

DISCUSSION

I

The parents contend there was no substantial evidence to support the court's jurisdictional findings.[5] They assert that at the time of the jurisdiction hearing, the minors were not at substantial risk of harm because the parents had completely rectified their mistake by securing the dresser that had fallen on the minors and taking other steps to ensure the minors' safety in the home. Thus, the parents argue, there was no reason to believe the neglectful acts would continue in the future.

A

In reviewing the sufficiency of the evidence on appeal, we consider the entire record to determine whether substantial evidence supports the juvenile court's findings. Evidence is " '[s]ubstantial' " if it is " ' "reasonable, credible, and of solid value." ' " (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140.) We do not pass on the credibility of witnesses, attempt to resolve

---

[5] Amber makes this argument as to both minors. Because Juan is not the father of Isaiah, his argument applies only to J.G.

conflicts in the evidence or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports a contrary finding. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53; *In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.) The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Section 300, subdivision (b) provides a basis for juvenile court jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the parent's failure to adequately supervise or protect the child or provide adequate medical treatment. In enacting section 300, the Legislature intended to protect children who are currently being abused or neglected, "and to ensure the safety, protection, and physical and emotional well-being of *children who are at risk of that harm*." (§ 300.2, italics added.) The court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re Heather A*. (1996) 52 Cal.App.4th 183, 194-196.) The focus of section 300 is on averting harm to the child. (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 536.)

Under section 300, subdivision (j) a child may be adjudged a dependent of the juvenile court if the "child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other [facts] the court considers

7

probative in determining whether there is a substantial risk to the child." A jurisdictional finding under section 300, subdivision (j) requires both past abuse of a child's sibling and a current risk the child will be abused in the future. (*In re Carlos T.* (2009) 174 Cal.App.4th 795, 803; *In re Ricardo L.* (2003) 109 Cal.App.4th 552, 565.)

Although "the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824), the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection. (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1135, disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 749, fn. 6; *In re Troy D.* (1989) 215 Cal.App.3d 889, 899-900.) A parent's past conduct is a good predictor of future behavior. (*In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169-1170.) "Facts supporting allegations that a child is one described by section 300 are cumulative." (*In re Hadley B.* (2007) 148 Cal.App.4th 1041, 1050.) Thus, the court "must consider all the circumstances affecting the child, wherever they occur." (*Id.* at pp. 1048, 1049.)

B

Here, the evidence showed Isaiah sustained a head injury and multiple bruises when he climbed on a dresser that fell on him while Amber was napping. The same dresser that injured Isaiah had fallen on J.G. several months earlier and the parents failed to take protective measures by securing it to the wall, even though they were aware that Isaiah "climbs on everything." As the juvenile court noted, the parents had ample notice of the need to supervise Isaiah, and yet they substantially delayed doing what was necessary to keep the minors safe.

8

Although the parents had remedied the dangerous conditions of the family home by the time of the jurisdiction hearing, there was other evidence that the minors were in need of the juvenile court's protection. Amber had a history of parental neglect and drug use, and she failed to reunify with her four oldest children. The parents did not drug test when required to do so, and Amber recently tested positive for methamphetamine. Despite participating in parenting classes, the parents lacked insight about why the minors were removed from their care. Further, the doctors who examined Isaiah at the hospital were concerned about medical neglect because of Amber's delay in seeking medical attention for a laceration to Isaiah's head. The doctors also noted Isaiah had a healed wrist fracture and multiple bruises in various stages of healing that were inconsistent with accidental injuries. Substantial evidence supports the court's finding Isaiah was at substantial risk of suffering serious physical harm or illness as a result of Amber's failure to adequately supervise or protect him. (§ 300, subd. (b).) Substantial evidence also supports a finding J.G. was at substantial risk of serious physical harm or illness within the meaning of section 300, subdivision (j).

II

The parents challenge the sufficiency of the evidence to support the court's dispositional orders. They assert the minors would not be at risk if left in the parents' custody and there were less drastic alternatives to removal. Juan further asserts the court erred by ordering his visits with J.G. to be supervised.

A

Before the court may order a child physically removed from his or her parent's custody, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if

9

returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c)(1).) The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home. (*Ibid.*) The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. (*In re Diamond H., supra*, 82 Cal.App.4th at p. 1136; *In re Jamie M.*, *supra*, 134 Cal.App.3d at p. 536, citing *In re B.G.* (1974) 11 Cal.3d 679, 699.)

B

Here, the court's dispositional orders were based on findings, supported by substantial evidence, the minors were at substantial risk of harm as a result of the parents' failure or inability to adequately supervise or protect Isaiah. The social worker identified several risk factors necessitating the minors' out-of-home placement, including Amber's history of substance abuse, prior child welfare history and recent positive test for methamphetamine; Juan's lengthy criminal history, drug-related arrests and recent aggressive behavior toward Amber; the parents' failure to drug test in order to have unsupervised visits with the minors; Isaiah's healed or healing injuries that were suspicious for nonaccidental trauma; the minors' vulnerability because of their young ages; and the parents' lack of insight about how to properly supervise an active child.

The parents argue there were less drastic alternatives, such as placing the minors with them and ordering intensive in-home services. However, the record contains sufficient evidence that the minors could not be protected without removing them from the parents' custody. Although Amber has enrolled in drug treatment, she needs additional time to show she can maintain her sobriety, given her struggle with substance abuse. Moreover, the parents

10

still did not understand that Isaiah had special needs that required extra vigilance and supervision. From this, the court could reasonably find that returning the minors to the parents' custody, even with Agency supervision and services in place, was not a feasible alternative to removal. (See *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60 [removal order proper if based on proof of parental inability to provide proper care for minor and proof of potential detriment to minor if he or she remains with parent].) Substantial evidence supports the court's dispositional orders.

## C

The juvenile court defines a parent's visitation rights by balancing the parent's interests in visitation with the child's best interests. (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757; §§ 362.1, subd. (a)(1)(A), 366.21.) Restrictions on parental visitation are proper if they are consistent with the child's best interests under the particular circumstances of the case. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1009.)

The court has broad discretion in making visitation orders, which we review for abuse of discretion. (*In re Lee G.* (1991) 1 Cal.App.4th 17, 26-27; *In re Julie M.* (1999) 69 Cal.App.4th 41, 48-51.) In this regard, the juvenile court's order will not be disturbed on appeal unless the court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. When two or more inferences reasonably can be deduced from the facts, we have no authority to reweigh the evidence or substitute our judgment for that of the juvenile court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319; *In re Tanis H.* (1997) 59 Cal.App.4th 1218, 1226-1227.)

11

Here, Juan visited J.G. only once a week and was often late for visits.  He declined the caregiver's offer for additional visits.  The social worker gave Juan the opportunity to have unsupervised visits with J.G. if he had negative drugs tests and explained that a failure to test would be considered a positive test.  Nevertheless, Juan did not drug test, which was especially concerning in light of his substance abuse history and his status as a narcotics offender.  From this, the court could reasonably find visitation should remain supervised until Juan progressed with the requirements of his case plan, including participating in a parenting class and consistently visiting J.G., arriving on time and interacting with him.  Having considered J.G.'s best interests, the court acted well within its broad discretion by requiring supervised visits between Juan and J.G.  (See *In re Chantal S.* (1996) 13 Cal.4th 196, 203; *In re Christopher H.*, *supra*, 50 Cal.App.4th at p. 1009.)

DISPOSITION

The judgments are affirmed.[6]

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.

---

[6]    Agency's request for judicial notice of postjudgment evidence is denied.  In light of this ruling, Juan's motion to strike Agency's references and arguments as to postjudgment evidence is moot.