Filed 11/7/13  In re M.S. CA 4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

1.  COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.S. et al., Persons Coming Under the Juvenile Court Law. | D064161 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A.P.,<br><br>    Defendant and Appellant. | (Super. Ct. No. J516123B-D) |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Sahyeh S. Riopelle, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

A.P. appeals the judgment entered following the jurisdiction and disposition hearing in the juvenile dependency case of her minor daughters, Z.P. and M.S. She contends the evidence was insufficient to support the court's dispositional order removing Z.P. from her custody. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On March 7, 2013, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under Welfare and Institutions Code[1] section 300, subdivision (a), on behalf of 14-year-old M.S., and under section 300, subdivision (j), on behalf of six-year-old Z.P. A.P. is the mother of half sisters M.S. and Z.P. With respect to M.S., the Agency alleged A.P. had subjected her to serious physical harm and abuse, including pulling M.S.'s hair, punching and scratching her, and throwing a textbook at her. With respect to Z.P., the Agency alleged there was a substantial risk that she would suffer serious physical harm as a result of A.P.'s abuse of M.S.

The Agency's allegations arose from an incident two days earlier near M.S.'s school. The school called A.P. because M.S. was not completing her homework. A.P. came to the school to pick up M.S., and they began to argue. According to M.S., A.P. approached M.S. after M.S. got in the backseat of A.P.'s car. A.P. then pulled M.S.'s hair and punched her on her arms and head. M.S. reported that Z.P. was in the car and was "screaming for them to stop." A.P. got in the front seat and drove to a recreation center, where A.P. again hit M.S. A.P. then drove to a gas station and directed M.S. to pump

---

[1]     Statutory references are to the Welfare and Institutions Code.

gas. When M.S. refused to do so, A.P. hit her again and drove to a different gas station. At the second gas station, A.P. told M.S. that she could not live with her. A.P. told M.S. that she had called M.S.'s older half sister, A.C., who did not live at home, to come and pick up M.S. M.S. then got out of the car and walked to a friend's house. M.S. told her friend's father about the incident, and he called the child abuse hotline because he was worried about M.S.'s safety.

Following this call, officers from the San Diego Police Department were sent to check on the welfare of M.S. When they arrived at the house of M.S.'s friend, they observed a two-inch-long scratch under M.S.'s right eye. The officers took M.S. back to her home, where they spoke with A.P. A.P. acknowledged that she and M.S. had fought at the school. A.P. said that M.S. ignored her attempts to address M.S.'s problems in school. A.P. then stated, "I got angry and told her I could hit her if I needed to." A.P. told the officers that M.S. initiated the fight and that A.P. reacted in self-defense.

The officers did not return M.S. to A.P.'s care and instead transported her to an emergency children's shelter. There, a medical examination confirmed M.S. had suffered injuries consistent with her account of the incident. M.S. had two scratches to the side of her face and bruises on both sides of her head. The examining doctor found that the injuries were "[c]oncerning for physical abuse." M.S. stated that A.P. had repeatedly beaten her, about once a week. M.S. also stated that Z.P. witnessed the abuse of M.S., and that A.P. physically abused Z.P., leaving marks and bruises.

The day after the incident, the Agency attempted to visit Z.P. in A.P.'s home. There was no answer at the home. The following day, the Agency attempted to visit Z.P.

3

at her school, but she was not present. A.P. had called the school and reported that Z.P. was on vacation with her grandmother. At a detention hearing, the court issued a pick up and detain order for Z.P. Later that day, two Agency employees, accompanied by San Diego police, made an unannounced visit to A.P.'s home to retrieve Z.P. Agency employees informed A.P. of the pick up and detain order for Z.P. A.P. stated that Z.P. was not at home. A.P. said Z.P. was with a relative, but she did not know where they were. A.P. would not give the name of the relative or any other information about the whereabouts of Z.P.

Several days later, A.P. surrendered Z.P. to the Agency. A medical examination of Z.P. revealed several bruises on her body. Z.P. reported that the bruises were from tight-fitting clothing or from an accident on playground equipment. The examining doctor was unable to determine the cause of the bruises. In interviews with Agency employees, Z.P. stated that A.P. "hits" M.S. and that M.S. "gets hurt from my mom." Z.P. said that A.P. gets "drunk" and then "she is a crazy driver." Z.P. stated that one time A.P. "got drunk because she had nine drinks and we crashed," causing Z.P. to require medical attention. Z.P. said that it scares her when A.P. drinks and drives. Arrest records indicate that in 2012, San Diego police stopped A.P. and arrested her for driving under the influence. A.P. later pleaded guilty. A.P. also has a history of drug abuse, including a 1998 conviction for marijuana possession.

A.P. had been a party to prior dependency proceedings regarding M.S., as well as A.P.'s two other children, A.C. and Elijah H. Z.P. had not yet been born. In January 2006, the Agency petitioned the juvenile court under section 300, subdivision (a), on

4

behalf of then 10-year-old A.C., alleging that A.P. had hit A.C. with a broomstick after she told an aunt about prior abuse. At the same time, the Agency petitioned the juvenile court under section 300, subdivision (j), on behalf of then seven-year-old M.S. and then four-year-old Elijah, alleging that each child was at risk of serious physical harm considering A.P.'s abuse of A.C. Elijah also reported physical abuse by A.P. The juvenile court later sustained the allegations of the petitions and removed all three children from A.P.'s custody. M.S. was placed with her presumed father, Michael S.[2] A.P. received reunification services as to A.C. and Elijah. However, she did not make substantive progress with her case plan, and the court terminated reunification services. A.C. and Elijah were placed with a legal guardian.

Pending the jurisdiction and disposition hearing, A.P. had supervised visitation with Z.P. Z.P. showed affection toward A.P. and, in interviews with the Agency, stated she would like to return home with A.P. However, when performing the "three houses" exercise with the Agency, Z.P. reported that she would not want to live with A.P. in Z.P.'s "house of wishes" because A.P. "snores, drools, and farts." The Agency's reports of A.P.'s visits with Z.P. were mixed, with the Agency noting that A.P. did not consistently take on a parental role or put Z.P.'s needs ahead of her own.

Following a contested hearing, the court sustained the allegations of the petitions on behalf of M.S. and Z.P. The court ordered M.S. and Z.P. removed from A.P.'s custody and ordered reunification services for A.P. with respect to Z.P.

---

2       In 2011, M.S. came to live with A.P. again.

DISCUSSION

A.P. contends the evidence does not support the court's dispositional order removing Z.P. from A.P.'s custody. A.P. argues there was no showing that Z.P. would be in danger if returned to her care or that reasonable alternatives to removal were considered.[3]

Before a child can be removed from parental custody, the Agency must prove, by clear and convincing evidence, "[t]here is or would be a substantial danger to [her] physical health, safety, protection, or physical or emotional well-being . . . if [she] were returned home" and removal is the only reasonable means of protecting her physical health. (§ 361, subd. (c)(1).) "A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus . . . is on averting harm to the child." (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136.) At disposition, the juvenile court must assess the circumstances as they exist at the time of the hearing. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) The court may consider the parent's past conduct as well as present circumstances. (*In re Troy D.* (1989) 215 Cal.App.3d 889, 900.)

---

3    In her notice of appeal, A.P. references the jurisdictional and dispositional orders regarding both M.S. and Z.P. However, in her briefing, A.P. has addressed only the dispositional order regarding Z.P. We limit our discussion accordingly.

6

On appeal, A.P. has the burden of showing there is no substantial evidence justifying Z.P.'s removal. (*In re Hailey T*. (2012) 212 Cal.App.4th 139, 147.) " ' "The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal." [Citations.]' [Citation.] Thus, on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' " (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881; *In re Mark L.* (2001) 94 Cal.App.4th 573, 580-581.) "[W]e must indulge in all reasonable inferences to support the findings of the juvenile court [citation], and we must also '. . . view the record in the light most favorable to the orders of the juvenile court.' " (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.)

Here, substantial evidence supports the court's dispositional order removing Z.P. from A.P.'s custody. The court found A.P. had subjected Z.P.'s half sister, M.S., to serious physical abuse. A.P. admitted telling M.S. that "I could hit her if I needed to." Z.P. had witnessed A.P. hitting M.S. and hurting her. According to M.S., A.P. had physically abused Z.P. as well, and Z.P. had bruising on her body when the Agency took her into protective custody. The evidence showed that A.P. drove while intoxicated with Z.P. in her car and that Z.P. was injured and needed medical attention as a result of the incident. In prior dependency proceedings, the court found A.P. had subjected another

7

half sister, A.C., to serious physical abuse.  Following that finding, A.P. did not complete reunification services.  Substantial evidence therefore supports the court's finding that there would have been "a substantial danger to [Z.P.'s] physical health, safety, protection, or physical or emotional well-being . . . if [she had been] returned" to A.P.  (§ 361, subd. (c)(1).)

The facts cited by A.P. in her briefing do not compel a different conclusion.  A ruling is supported by substantial evidence even if there are conflicting facts.  We "have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences that may be drawn from that evidence.  [Citation.]  Under the substantial evidence rule, we must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact."  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.)  A.P. must show the absence of substantial evidence to support the court's order, and she has not done so.

Separately, A.P. argues that substantial evidence does not support the court's order because the court did not consider whether any reasonable means existed by which Z.P.'s physical health could be protected without removing her from A.P.'s custody.  (See § 361, subd. (c)(1).)  Relying on *In re Jeannette S.* (1979) 94 Cal.App.3d 52, in which the court found reasonable alternatives to removal existed, A.P. contends the court could have placed "stringent conditions on the return of Z.P." to A.P., instead of removing Z.P. from her custody.

8

Unlike the facts in *In re Jeannette S.*, the evidence here showed that A.P. had committed serious physical abuse of two of Z.P.'s half siblings and had driven with Z.P. while intoxicated, causing her to need medical attention, among other risks.  (See *In re A.S.* (2011) 202 Cal.App.4th 237, 248, fn. 6.)  The evidence also showed A.P.'s unwillingness to participate in services and her lack of cooperation with the court's pick up and detain order for Z.P.  Substantial evidence supports the court's finding there were no reasonable means by which Z.P.'s physical health could be protected without removing her from A.P.'s custody.  (§ 361, subd. (c)(1).)

DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


AARON, J.

9