Filed 6/24/14  In re D.J. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.J. et al., Persons Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>T.A.,<br><br>　　　Defendant and Appellant. | A139280<br>A139982<br>A140147<br><br>(Contra Costa County<br>Super. Ct. Nos. J1300653, J1300654,<br>J1300655) |

　　　Appellant T.A. (Mother) argues on appeal no substantial evidence supports the juvenile court's jurisdictional and dispositional orders with respect to her daughter, A.J. We affirm.

BACKGROUND

　　　In May 2013, the Contra Costa County Children & Family Services Bureau (Bureau) filed the present Welfare and Institutions Code section 300[1] petition on behalf of A.J, then nine years old.  Related petitions were filed on behalf of Mother's other

---

[1]　　　All undesignated section references are to the Welfare and Institutions Code.

daughter, D.J. (then 15 years old), and Mother's niece, K.J. (then 11 years old). At the time, Mother was K.J.'s legal guardian.[2]

The petitions alleged Mother struck D.J. on the face and head, leaving swollen areas and a ringing in her ears. The petitions further alleged Mother previously punched D.J. in the face, causing her nose to bleed. The petitions alleged Mother's ability to care for and supervise the minors was impaired. (§ 300, subdivision (b).) The petition on behalf of D.J. also alleged she had suffered serious physical harm (§ 300, subd. (a)), and the petition on behalf of A.J. alleged sibling abuse (§ 300, subd. (j)).

The contested jurisdictional hearing on all three petitions was held in July 2013.[3] D.J. testified Mother hit her in the face three times with her fist, leaving a "lump," and hit her in the ear, leaving a ringing in her ears. D.J. testified Mother was angry because D.J. said she did not believe in mind reading. On another occasion, Mother punched D.J. in the face, causing a nosebleed. Mother had unprovoked angry outbursts at D.J. and other people, behavior that had been going on for four years and was getting worse over time. Mother also said things D.J. did not understand, for example, Mother talked about the government tracking people down. In an interview with a Bureau social worker, as

---

[2]    In these consolidated appeals, Mother appealed from the jurisdictional findings as to all three minors (case No. A139280), the jurisdictional findings and order terminating Mother's guardianship of K.J. (case No. A139982), and the jurisdictional findings and dispositional orders regarding D.J. and A.J. (case No. A140147). The jurisdictional findings appealed from in case No. A139280 are not appealable, but are reviewable in the appeals from the dispositional orders in cases No. A139982 and No. A140147. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393, fn. 8.) Although courts have deemed notices purporting to appeal from jurisdictional findings as appealing instead from a subsequent dispositional order (see *ibid.*), we need not do so here because Mother also appealed from the dispositional orders. Accordingly, we dismiss case No. A139280. In addition, in her briefs on appeal, Mother contests only the jurisdictional and dispositional orders with respect to A.J. She has therefore waived any arguments in case No. A140147 with respect to D.J. and in case No. A139982 with respect to K.J. We discuss the background facts regarding D.J. and K.J. only as relevant to Mother's arguments regarding A.J.

[3]    Prior to this hearing, all three minors were removed from Mother's custody and released to D.J. and A.J.'s father (Father).

documented in a written Bureau report received into evidence, D.J. reported Mother saying " 'the people in the telephone are watching her.' " D.J. stated Mother did not hit A.J.

K.J. also testified at the jurisdictional hearing. She witnessed Mother hitting D.J. repeatedly on the head. A.J. was also present. Mother had hit K.J. on the face on more than one occasion. K.J. had not seen Mother hit A.J. K.J. also testified to "embarrassing" things Mother said. For example, when K.J. wore a pedometer for a health project at school, Mother told her "the government is actually tracking you with pedometers."

Tracy Kenney, the social worker who prepared the Bureau's report, testified. Her report described interviewing D.J. the day after, according to D.J., Mother hit her repeatedly in the face. In this interview, Kenney witnessed swelling on D.J.'s forehead and the left side of her face. Her report also recorded Mother's statement that she had spanked D.J. because she was being disrespectful. Mother subsequently stated she hit D.J. with her fist on the shoulder, and D.J had hit her.

Kenney also testified to, and her report described, statements Mother made that caused Kenney concern. Mother told Kenney, " 'A few churches are trying to take my children. They are trying to make me a prostitute. I got evidence of all this. Using bio-metrics and trying to make people slaves and all this.' " Mother later stated, "My concern is why are these churches trying to take my children from me. Not only that did you know that they were running around trying to say that I was a man, I was an it, I didn't give birth to my children."

Father informed Kenney of his concerns about Mother's "mental state." He reported Mother had exhibited angry and volatile behavior for the past three years.[4]

---

[4] The Bureau's report also described an interview with K.J.'s attorney regarding Mother. Mother objected to this hearsay evidence. The juvenile court admitted the evidence, but gave "very little weight to it if any." Because, as we find below, other substantial evidence supports the juvenile court's findings, we need not and do not rely on this evidence.

The juvenile court sustained the allegations that Mother "has displayed behaviors that impairs [*sic*] her ability to care for and supervise the [minors]. [Mother] has been volatile and violent towards and/or in front of the [minors]." The court also sustained the section 300, subdivision (j) allegation with respect to A.J., and the section 300, subdivision (a) allegation with respect to D.J. The court expressly found D.J. and K.J. "very credible" witnesses and noted "[t]he descriptions that they provided for [Mother's] behaviors and anger are not inconsistent with behaviors that have been on display in this courtroom."

The dispositional hearing for D.J. and A.J. was held in September 2013. Two Bureau reports were received into evidence. The reports described the minors as "thriving" with Father, although the second report stated A.J. wished to return to live with Mother. The reports described several instances in which Mother exhibited angry, volatile, and/or threatening behavior with Bureau staff. The reports also noted Mother continued to admit only to "spanking" D.J., rather than hitting her in the face.

Against the advice of counsel and her guardian ad litem[5], Mother testified at the dispositional hearing. Mother disagreed with the case plan's recommendation she have a mental health assessment because "I have no mental health issues within my family." Mother disagreed with the case plan's requirement of domestic violence counseling because "my child struck me and when she struck me I defended myself." She testified she did not need anger management services because "I'm not angry."

The juvenile court adjudged D.J. and A.J. dependents of the juvenile court and found by clear and convincing evidence there is or would be substantial danger to them if they were returned to Mother's custody.

---

[5]    Prior to the jurisdictional hearing, the juvenile court appointed a guardian ad litem for Mother because the court concluded Mother was "unable to understand the proceedings," in part because she was "unable to follow [the court's] basic instructions . . . not to interrupt [the court]."

4

DISCUSSION

" 'When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason. [Citation.]' [Citation.]" (*In re Savannah M., supra,* 131 Cal.App.4th at p. 1393.)

I. *Jurisdictional Findings*

Section 300, subdivision (b) provides a basis for juvenile court jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." Section 300, subdivision (j) provides a basis for juvenile court jurisdiction if "[t]he child's sibling has been abused or neglected, . . . and there is a substantial risk that the child will be abused or neglected . . . ."[6] The Bureau had the burden of proving the basis for jurisdiction by a preponderance of the evidence. (§ 355, subd. (a).)

Substantial evidence supports the juvenile court's jurisdictional findings. There was evidence Mother was physically violent with D.J. and had also hit K.J.; was volatile and angry; and held unreasonable beliefs, yet became violent when D.J. disagreed with these beliefs. This created a substantial risk Mother would be physically violent with A.J. in the future.

Mother argues there was no evidence her unreasonable beliefs — for example, in mind reading and that churches were trying to take away her children — created a risk of physical harm for A.J. We disagree. There was evidence Mother physically abused D.J.

---

[6] Mother does not dispute the allegation that A.J.'s sibling, D.J., had been abused.

5

because D.J. reasonably disagreed with Mother's belief in mind reading. Substantial evidence supports the finding that Mother's physical violence in the face of disagreement with her unreasonable beliefs placed A.J. at risk.

Mother also suggests there was no evidence her angry outbursts placed A.J. at risk. We again disagree, as there was evidence Mother's explosive temper at times led to physical violence.

Mother argues her physical abuse of D.J. does not place A.J. at risk because it was the result of a conflict specific to Mother and D.J. However, the "conflict" was the result of D.J.'s refusal to agree with Mother's unfounded beliefs, something that could easily occur with A.J. as well. Moreover, there was evidence Mother had hit K.J. on more than one occasion in the past, demonstrating Mother's physical violence was not limited to D.J. Evidence that A.J. was not afraid of Mother at the time of the jurisdictional hearing does not preclude a finding she was nonetheless at substantial risk of physical harm.

II. *Dispositional Findings*

The juvenile court found "[t]here is substantial danger to [A.J.'s] physical health, or would be if [A.J.] were returned home, and there are no reasonable means to protect [A.J. without] removal of physical custody." (See § 361, subd. (c)(1).)[7]

We conclude substantial evidence supports the court's finding, for largely the same reasons the jurisdictional findings are so supported. Although the dispositional hearing took place seven weeks after the jurisdictional hearing, Mother continued to display angry and threatening behavior. Moreover, in Mother's testimony at the

---

[7]     The juvenile court made this finding by clear and convincing evidence. (§ 361, subd. (c).) There is a split of authority over how a reviewing court should apply substantial evidence review to such a finding. (Compare *In re Angelique C.* (2003) 113 Cal.App.4th 509, 519 ["on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied' "]; with *In re Isayah C.* (2004) 118 Cal.App.4th 684, 694 [review determines "whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings *based on the clear and convincing evidence standard*"].) We need not decide the proper approach in this case because we affirm the court's finding in either event.

dispositional hearing, she refused to acknowledge the physical harm she caused D.J. or her need for services.

Mother argues the trial court failed to consider the alternative of family maintenance services. However, as noted above, at the dispositional hearing Mother denied needing the recommended services. Mother's citations to *In re Jeannette S.* (1979) 94 Cal.App.3d 52 and *In re Henry V.* (2004) 119 Cal.App.4th 522 are unavailing. In each case, the court of appeal reversed a removal order on the ground the child could safely be kept in the custodial parent's home with the provision of services. (*In re Jeannette S.,* at pp. 59-60; *In re Henry V.,* at p. 529.) However, in each case the custodial parent amply demonstrated willingness to take advantage of supportive services. (*In re Jeannette S.,* at p. 56; *In re Henry V.,* at p. 529.) Here, in contrast, the juvenile court reasonably could have found that family maintenance services would have been ineffective because Mother denied needing such services.

DISPOSITION

The appeal in case No. A139280 is dismissed. The orders appealed from in cases No. A139982 and No. A140147 are affirmed.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.

7