Filed 10/1/15  In re A.B. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.B. et al., Persons Coming Under the Juvenile Court Law. | B261472 (Los Angeles County Super. Ct. No. DK07747) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> OCTAVIO B., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Philip L. Soto, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jessica Paulson-Duffy, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minors.

* * * * * *

Tina B. (mother) had methamphetamines, a digital scale, empty baggies, and two glass pipes in her car along with four of her five children. The Department sought to exercise dependency jurisdiction over all five children on the basis of mother's drug use, Octavio B.'s (father) failure to protect the children from mother's drug use, and the unsanitary condition of their home. Father argues that the juvenile court's findings against him are not supported by substantial evidence. We are unpersuaded, and affirm.

## FACTUAL AND PROCEDURAL HISTORY

Mother and father have five children—A.B. (born 2000), V.B. (born 2002), E.B. (born 2004), S.B. (born 2009), and M.B (born 2012).

In late September 2014, while father was in the hospital with acute heart failure brought on by diabetes, mother drove a car containing vials of methamphetamine, a digital scale, empty baggies, and nearly $3,000 in cash, while under the influence of methamphetamine. Her four youngest children were in the car with her.

After the Los Angeles County Department of Children and Family Services (Department) took custody of the children, Department personnel visited the family home; it was surrounded by broken glass, trash, scrap metal and dog feces. In the months leading up to mother's arrest for drug possession, father initially stated that he "had suspicions" mother might be using drugs given her open sores and unusual behavior, but he later disclaimed any awareness she was actually using drugs. He also knew that drug users were staying in and around the house. During that same time frame, school personnel had noticed the children's lack of hygiene, the middle child made wheezing noises when he spoke, and the youngest child had spent two weeks in a hospital after surgery for a lymph node infection.

The Department filed a petition asking the juvenile court to assert dependency jurisdiction over all five children under Welfare and Institutions Code section 300,

2

subdivision (b)(1),[1] on three grounds—namely, that the children were placed at substantial risk of serious physical harm (1) due to mother's "inability . . . to provide regular care . . . due to [her] . . . substance abuse"; (2) due to father's "negligent failure . . . to adequately supervise or protect the children from the conduct of [mother]"; and (3) due to mother and father's "negligent failure . . . to provide the child[ren] with adequate food, clothing, [and] shelter . . . ."

The juvenile court sustained the Department's petition on all three grounds. As to father, the court did not find father's proclaimed ignorance of mother's drug use to be dispositive, noting that he "was either seeing life through rose-colored glasses or incredibly duped by the mother." Specifically, the court "found [father] should have known or reasonably should have known of the mother's drug use." The court removed the children from both parents' custody, but ordered father to work with the Department to develop a plan allowing him to regain custody by moving into the paternal grandmother's home.

Father timely appeals.

## DISCUSSION

Father challenges the sufficiency of the evidence supporting each of the findings against him.[2]

The Department urges that the jurisdictional findings against mother are sufficient to uphold the juvenile court's dependency jurisdiction over the children, and that we need not reach father's challenges. To some extent, the Department is correct. (*In re D.P.* (2014) 225 Cal.App.4th 898, 902 (*D.P.*) ["'As long as there is one unassailable

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     Father also challenged the court's dispositional order, but we have taken judicial notice of the fact that the juvenile court placed the children back with father at the paternal grandmother's home. The parties agree that this issue is now moot.

jurisdictional finding, it is immaterial that another might be inappropriate'"], quoting *In Ashley B.* (2011) 202 Cal.App.4th 968, 979.) However, we may still review a finding if that finding would be prejudicial to the appellant (*D.P.*, at p. 902), such as when that finding "serves as the basis for dispositional orders that are also challenged on appeal" or when that finding "could potentially impact current or future dependency proceedings" (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763). Here, the findings against father are prejudicial to him because they are "the difference between [him] being an 'offending' parent versus a 'non-offending' parent." (*Ibid.*)

In evaluating father's challenges, our task is simply to "determine if substantial evidence, contradicted or uncontradicted, supports" the juvenile court's findings. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We undertake this task by considering the record as a whole, resolving all conflicts and drawing all reasonable inferences in support of those findings. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103.) We are not allowed to reweigh the evidence ourselves. (*Ibid.*)

## I.      Failure to Protect Children from Mother's Substance Abuse

To sustain a finding of dependency jurisdiction under section 300, subdivision (b)(1), the juvenile court must find: "(1) neglectful conduct . . . by a parent in one of the specified forms, (2) causation, and (3) serious physical harm to the child, or a substantial risk of such harm." (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724-725.) Father argues that the evidence does not establish (1) that he was negligent because he was unaware of mother's drug use or (2) that children were at substantial risk of serious physical harm.

We reject both arguments. The evidence indicates that mother started acting differently in the months prior to her arrest, had visible open sores, and invited drug users to her home as house guests and visitors. Indeed, father initially admitted that he "had suspicions" that mother was using drugs. Although father later recanted that admission, his denial of *actual* knowledge of her drug use—as well as the fact that other people who

4

saw mother less often also did not know of her drug use—is irrelevant; what matters is what a reasonable person in father's situation would have suspected. The juvenile court had ample evidence upon which to conclude that father "should have known" about mother's drug use and that his ignorance was the unreasonable product of "seeing life through rose-colored glasses."

The record also supports the juvenile court's finding that the children were at substantial risk of serious physical harm. It is well settled that allowing children to be in proximity to drugs and drug paraphernalia places them at substantial risk of serious physical harm. (E.g., *People v. Perez* (2008) 164 Cal.App.4th 1462, 1473 [so holding].) To be sure, father was in the hospital on the day mother drove the children around town with a car full of methamphetamine and money. But he had (or should have) harbored suspicions for months before that day, and his failure to act on those suspicions placed the children at risk.

## II.    Failure to Protect Children from a Dirty House

Dependency jurisdiction may also be invoked due to a dirty home that places a child at substantial risk of serious physical harm, but only if the unsanitary conditions give rise to "ill effects" or a risk of such effects. (See *In re Paul E.* (1995) 39 Cal.App.4th 996, 1005 (*Paul E.*) ["chronic messiness by itself and apart from any unsanitary conditions or resulting illness or accident, is just not clear and convincing evidence of a substantial risk of harm"], italics omitted.) Courts must therefore "distinguish[] between a loving-but-dirty-home case and a case of real neglect." (*Id.* at p. 1005, fn. 8.) Jurisdiction lies if the messy home results in a child's malnourishment, sleep deprivation or illness. (See *In re Jeanette S.* (1979) 94 Cal.App.3d 52, 58-59 [child in filthy home lacked a place to sleep, never ate breakfast, and wore clothes soiled with urine; jurisdiction proper]; *In re Susan M.* (1975) 53 Cal.App.3d 300, 306 [child in filthy home was malnourished, "tremendously dehydrated," "severely anemic, somewhat cyanotic and inflicted with bronchiolitis"; jurisdiction proper].)

5

This is a close case.  The evidence of "ill effects" is limited to reports that some of the children had bad hygiene at school, to the middle child's respiratory difficulty, and to the youngest child's lymph node infection, which prompted a two-week hospital stay. Although the record does not contain evidence specifically tying the children's illnesses to the lack of hygiene, the juvenile court could reasonably have drawn an inference of causal connection; such an inference is not one we may gainsay on appeal.  We therefore sustain dependency jurisdiction on this ground as well.

## DISPOSITION

We affirm the juvenile court's jurisdictional findings.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
ASHMANN-GERST

6