Opinion
 

 FRANSON, J.
 

 Statement of the Case
 

 Appellant Margery S. appeals from a judgment of the juvenile court declaring her five-year-old daughter Jeannette S. a dependent child of the juvenile court under section 300, subdivisions (a) and (b) of the Welfare and Institutions Code and removing the child from her custody and control under section 361, subdivisions (a) and (b) of that code. (All further statutory references are to the Welfare and Institutions Code unless otherwise specified.)
 

 On January 5, 1978, representatives of the Merced County Department of Human Resources (hereinafter Department) went to appellant’s home
 
 *55
 
 where Jeannette resided to investigate problems which appellant had mentioned to a Department representative earlier that day. As a result of that investigation, Jeannette was taken into protective custody. On January 6, 1978, Sheila Callan, a Department social worker, filed a petition in the juvenile court alleging that Jeannette was a person described under section 300, subdivisions (a) and (b).
 

 At the detention hearing both appellant and Frank S., the minor’s father, were present. The father requested that Jeannette be placed in his custody pending the jurisdictional hearing. The court denied the request, found probable cause to detain Jeannette and ordered her detained. The court appointed separate counsel to represent Jeannette’s mother and father at the jurisdictional and dispositional hearings.
 

 At the jurisdictional hearing which commenced on January 25 and was completed after several continued hearings on February 22,1978, the court found that Jeannette was a person within the provisions of section 300, subdivisions (a) and (b) since she had no parent capable of exercising the necessary care and control or of providing her with a suitable home; she was accordingly declared a dependent child of the court.
 

 The parties agreed to proceed with the dispositional hearing immediately. The judge stated that he had reviewed the dispositional reports and had concluded that the minor should be placed in the custody of the Department for suitable placement. The court found that the allegations of the petition were true; that the award of custody to the parents would be detrimental to the minor; and that the award to the Department would serve the best interests of the child. It was ordered that Jeannette be placed in the custody of the Department for suitable placement. It was further ordered that the matter be continued for a review hearing on January 10, 1979, and that during the interim both parents would have the right to visit Jeannette without supervision.
 

 Appellant filed a timely notice of appeal.
 

 The Evidence
 

 Jeannette was born to appellant and Frank on July 23, 1972. They were divorced in 1976, and appellant was awarded custody of Jeannette. Jeannette lived with appellant in Merced until she was detained by the Department on Januaiy 5. Frank had regularly exercised visitation rights on weekends during the two-year period since the divorce.
 

 
 *56
 
 Appellant’s psychological profile reveals that she is of above average intelligence; that she suffers from chronic anxiety and has a somewhat schizoid personality. Appellant attended a mental health clinic on a daily basis from 9 a.m. to 3 p.m. where she participated in group therapy and other activities. She demonstrates a concern for her child and her relationship with Jeannette is a close and loving one.
 

 Appellant has a limited income and has been active in seeking aid from social agencies. She requested and received visits from a public health nurse who instructed her on child care. She also received assistance from a homemaker assigned by the welfare department for the two weeks preceding Januaiy 5, 1978. The homemaker apparently reported to her supervisor that the assignment was “unsuccessful,” but the homemaker did not testify at the hearings to explain what the problem was about. Appellant testified that the homemaker merely transported Jeannette to the doctor and to the day-care school while appellant was at the mental health clinic. Other than one time for a five-minute period, the homemaker did not assist appellant in cleaning the house. Appellant acknowledged that it was difficult for her to take criticism but “If it is made in a suggestive way, I can cope with it.” Except for the homemaker service for the two weeks preceding Januaiy 5, appellant had received no assistance in the care of her home for the past one and a half years. On the afternoon of January 5, appellant went to the Department’s office and told one of the supervisors that she had several problems with her home situation and that she needed help, thereby triggering the instant proceedings.
 

 When the Department representatives went to appellant’s house on Januaiy 5, they found it dirty and cluttered with debris. There were extensive dog feces on the kitchen floor and cat feces in the bathroom. The house smelled of urine and there was spoiled food on the stove. Jeannette had been forced to sleep on the couch in the living room because her bedroom was such a mess.
 

 Appellant kept three dogs and two cats at her residence.
 

 Jeannette was in apparent good health and good spirits on Januaiy 5. There was no evidence of trauma or abuse. However, Jeannette’s kindergarten teacher testified that the child was frequently dirty when she came to school and her clothing was extremely odifero.us which caused some teasing by the other children. Although Jeannette behaved in a distracted manner at school and had difficulty communicating due to a
 
 *57
 
 speech defect, her behavior was not particularly deviant. A psychological evaluation of Jeannette by the school psychologist reveals that she is mildly hyperactive and sometimes has difficulty concentrating in class, but her academic progress is good. She is bright and gets along well with others.
 

 There was some evidence that on occasions appellant did not prepare breakfast or other meals for Jeannette; however, she did not appear undernourished. Frequently appellant was not home when Jeannette returned from school.
 

 Mr. Stutsman, a social worker for the Department, testified at the jurisdictional hearing that he had visited appellant’s home on several occasions from January 1976 to August of 1977 because of complaints by school authorities about Jeannette’s unclean appearance at school. On one occasion in February 1976, he went into the house and found it to be extremely dirty with animal feces on the floor.
 

 Jeannette’s father Frank appeared at both the jurisdictional and dispositional hearings and requested custody of Jeannette. He testified that he loved Jeannette and had a good relationship with her. He had regularly exercised his visitation rights with Jeannette during the two years since his divorce from appellant. Frank lived in a small two-bedroom single-bath house in Merced with Robert and Helen Christian-sen (his former brother-in-law and his wife). The Christiansens had moved into Frank’s house to provide a home for Jeannette if she should be removed from the custody of her mother. Mr. Christiansen is employed fulltime as a truck driver, and his wife Helen would care for Jeannette at Frank’s home. Frank testified that he would give Jeannette his room and would sleep on the couch in the living room.
 

 Sheila Callan, a social worker, investigated Frank’s home and filed a supplemental report at the jurisdictional hearing. The report states that because Frank’s house has only two bedrooms and one bath that the sleeping arrangements proposed by Frank if he should obtain custody of Jeannette would be unsatisfactory in that he would have to go through Jeannette’s bedroom to reach the bathroom. The report states, “This action appears to be antithetical to the well-being of Jeannette because of the crowded living arrangements.” The report also noted that Frank has an unstable employment record and receives welfare and unemployment benefits. He also has a serious problem with alcohol and lacks the
 
 *58
 
 knowledge and skills required for child rearing.
 
 [1]
 
 Ón the basis of her investigation, Ms. Callan opined that Frank was incapable of providing a suitable home for Jeannette due to his alcoholism, financial instability and lack of “parenting skills.” She recommended that Jeannette be placed in the custody of the Department for suitable placement.
 

 At no time did the Department in its dispositional reports to the court recommend a plan for reuniting Jeannette with her mother or father as required by California Rules of Court, rule 1376(b). The dispositional report recommended that the parents’ visits with Jeannette be supervised by a social worker “to insure that Jeannette will not be upset by false promises, threats and demands [by the parents].” The court rejected the recommendation.
 

 There Is Sufficient Evidence to Support the Jurisdictional Finding of Dependency
 

 The standard of proof required to establish that a minor is a dependent child under section 300 is the “preponderance of the evidence.” (§ 355.) If there is any substantial evidence to support the findings of the juvenile court, a reviewing court must uphold the trial court’s findings. All reasonable inferences must be drawn in support of the findings and the record must be viewed in the light most favorable to the juvenile court’s order.
 
 (In re Carrie W.
 
 (1978) 78 Cal.App.3d 866, 872 [144 Cal.Rptr. 427].)
 

 In the present case, the report prepared by the Department for presentation at the jurisdictional hearing details the condition of Jeannette’s inadequate home environment. That report states that Jeannette was sent to school in clothes which were soiled with urine, she was not given breakfast at home, and she frequently returned from school to an empty house. The home was “filthy” and there was no adequate place for Jeannette to sleep because of clutter. The jurisdictional report also stated that appellant had not provided a stable mother role and was unable to place her child’s needs above her own. Testimony of witnesses verified the allegations in the report and established that the condition of the
 
 *59
 
 home on January 5 was not an isolated occurrence. Thus, there was substantial evidence to support the trial court’s order that Jeannette be declared a dependent child of the court.
 
 [2]
 

 We have considered and reject the various contentions of appellant that she was deprived of constitutional and statutory procedural due process requirements by lack of notice of the jurisdictional charges under section 300. We also reject her contention regarding the lack of written findings of fact.
 

 There Is Insufficient Evidence to Support the Dispositional Order Removing Jeannette From the Custody of Her Mother and Father Under Section 361
 

 It is a cardinal rule of our society that the custody, care and nurture of a child resides first in the parents rather than in a public agency.
 
 (Stanley
 
 v.
 
 Illinois
 
 (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558, 92 S.Ct. 1208];
 
 Prince
 
 v.
 
 Massachusetts
 
 (1944) 321 U.S. 158, 166 [88 L.Ed. 645, 652, 64 S.Ct. 438];
 
 Pierce
 
 v.
 
 Society of Sisters
 
 (1925) 268 U.S. 510 [69 L.Ed. 1070, 45 S.Ct. 571, 39 A.L.R. 468];
 
 Meyer
 
 v.
 
 Nebraska
 
 (1923) 262 U.S. 390, 399 [67 L.Ed. 1042, 1045, 43 S.Ct. 625, 29 A.L.R. 1446].) As stated in
 
 In re Carmaleta B.
 
 (1978) 21 Cal.3d 482 at page 489 [146 Cal.Rptr. 623, 579 P.2d 514]: “Parenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood. Thus, . . . ‘[t]he relationship of . . . natural parent . . . [and] . . . children is a vital human relationship which has far-reaching implications for the growth and development of the child. (See Kay & Phillips,
 
 Poverty and the Law of Child Custody
 
 (1966) 54 Cal.L.Rev. 717.) . . . [T]he involuntary termination of that relationship by state action must be viewed as a drastic remedy which should be resorted to only in extreme cases of neglect or abandonment’ [citations], . . . [Severing the parental relationship [must be] the least detrimental alternative for the child.”
 

 
 *60
 
 In furtherance of these principles, the courts have imposed a standard of
 
 clear and convincing
 
 proof of parental inability to provide proper care for the child and resulting detriment to the child if it remains with the parent, before custody can be awarded to a nonparent. (See
 
 In re B. G.
 
 (1974) 11 Cal.3d 679, 698-699 [114 Cal.Rptr. 444, 523 P.2d 244];
 
 In re Christopher B.
 
 (1978) 82 Cal.App.3d 608, 617 [147 Cal.Rptr. 390];
 
 In re Robert P.
 
 (1976) 61 Cal.App.3d 310, 319 [132 Cal.Rptr. 5].)
 

 The clear and convincing standard was not met in the instant case. First, the juvenile court had two reasonable alternatives available to it short of awarding custody to the Department. It could have returned Jeannette to her mother under stringent conditions of supervision by the welfare department with the warning that if she again let her house get filthy or failed to keep Jeannette in clean clothes and to properly care for her that appellant would lose custody of the child. Moreover, the trial court could have ordered the removal of some or all of the animals at appellant’s residence as a condition of returning Jeannette to her mother. It could have ordered homemaker service to assist appellant in keeping her home clean; the fact that she had received some assistance for the two weeks preceding the January 5 incident does not demonstrate a total incapacity to benefit from future homemaking service in light of the fact that she had received no such assistance in the preceding one-and-a-half-year period. Moreover, the trial court should have ascertained the cause of the difficulty between appellant and the homemaker which triggered appellant’s request for help from the Department on January 5. Perhaps, another homemaker would have been successful in getting appellant to clean her house—at least the possibility that this could be accomplished should have been explored. If stringent supervision of appellant’s activities with reference to Jeannette did not provide a suitable home environment, then the court could remove Jeannette from the custody of her mother.
 

 Second, assuming the trial court had a reasonable basis for concluding that appellant was incapable of providing a suitable home for Jeannette, it could have placed Jeannette with her father and the Christiansens. Frank offered an alternative home to Jeannette. The fact that the home was small, that Frank was unemployed and that he had a drinking problem does not support a finding that it would be detrimental to Jeannette for her to be with her father and the Christiansens rather than the Department. The presence of Mrs. Christiansen in the home would have alleviated any concern arising from Frank’s alcoholism and arrest for child molesting 13 years earlier. Apparently, Frank recognized this
 
 *61
 
 when he asked the Christiansens to move in with him. Again, under the trial court’s broad powers of supervision over Jeannette and her home environment (§ 362), it could have monitored Jeannette’s progress in her father’s home to assure her protection.
 

 We observe that none of the social reports filed by the Department at the dispositional hearing included a “recommended plan for reuniting the minor with the family,” as required by California Rules of Court rule 1376(b). It is readily apparent that the Department had “given up” insofar as appellant and Frank’s ability to properly care for Jeannette. While this attitude is understandable, it is contrary to the policy of the law. We deem it appropriate to quote from Judge Homer Thompson’s California Juvenile Court Deskbook (2d ed. Cont.Ed.Bar 1978) at page 184:
 

 “Although placement in the parents’ home is utilized at times in all kinds of section 300 cases, it is most frequently used in filthy home cases. These cases are the most responsive to supervision, and are usually referred to the probation department by social workers in the welfare department. Many of these cases involve families on welfare, and a social worker is already working with the family. Frequently the welfare department has a home-services unit or officer who will enter a filthy home and help the mother with the problems that have produced the condition.
 

 “Filthy home cases are sometimes those in which it is most difficult to remove the children,
 
 and often it could be the most damaging to the children to do so.
 
 Even though the home is a health hazard for the children, the mother is often a good, loving, and attentive mother in other respects. The children have responded to their mother’s love and are very close to her.
 
 Removal of such children can be a shattering experience for them.
 
 ” (Italics added.)
 

 The judgment is reversed as to the dispositional order placing Jeannette in the custody of the department of human resources. The trial court is directed to conduct another dispositional hearing in accordance with the principles expressed herein.
 

 Brown (G. A.), P. J., and Creede, J.,
 
 *
 
 concurred.
 

 [1]
 

 The report also notes that Frank “has an arrest record of contributing to the delinquency of a minor; he molested a six-year old female in December 1965." However, apparently neither the Department nor the juvenile court place any emphasis on the arrest record in making the recommendation and decision not to place Jeannette with Frank. Mrs. Christiansen’s presence at Frank’s home should have obviated any concern in this regard.
 

 [2]
 

 We acknowledge that the dependency order is highly questionable insofar as Frank’s ability to provide effective care and control of Jeannette (§ 300, subd. (a)) and to provide Jeannette with the necessities of life and with a suitable place of abode (§ 300, subd. (b)). It is difficult to justify the dependency finding in light of Frank’s willingness to accept Jeannette in his home under the care and supervision of Mrs. Christiansen. The crowded living conditions together with Frank’s alcoholism and dependence upon welfare services clearly are insufficient, standing alone, to support a finding of dependence. However, Frank has not appealed the dependency order, and we believe that the reversal of the disposition order and a remand for another dispositional hearing will adequately protect Jeannette’s interests.
 

 *
 

 Assigned by the Chairperson of the Judicial Council.