Filed 2/29/16  In re Alexis C. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ALEXIS C. et al, Persons Coming Under the Juvenile Court Law. | B265643 |
| _____ | (Los Angeles County Super. Ct. No. DK09373) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| MARCOS C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Annabelle G. Cortez, Judge.  Reversed.

Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Marcos (Father) appeals[1] from the order of the juvenile court asserting jurisdiction over his four daughters under Welfare and Institutions Code section 300, subdivisions (a), (b) and (j).[2] There being no evidence that the children are at risk of serious physical harm, the order is reversed.

## FACTS AND PROCEEDING BELOW

Alexis (age 15), Marissa (age 14), V. (age 13) and Melanie (age 3), came to the attention of the Department of Children and Family Services (DCFS) in December of 2014, when a friend of Marissa's reported to the school that Marissa had bruises on the front and back of her thigh, which the friend observed while they were changing for physical education class. When questioned by the school, Marissa stated that, on December 13, 2014, she and Father had argued over Marissa's refusal to help clean the house. Father requested that Marissa give him her cellular phone as a consequence for her disrespectful behavior. Marissa refused, and Father lost his temper, hitting her with his hand on her mouth and a belt on her thigh. Marissa explained that this was the first time Father had hit her.

On December 15, 2014, a DCFS children's social worker (CSW) privately interviewed each of the children, Father and Vanessa (Mother) at their home. Marissa confirmed her previous report to school authorities and reiterated that Father's use of violence was an isolated incident. Alexis confirmed Marissa's account of the event. V., who was in the kitchen at the time of the incident, did not witness the argument, but remembered Marissa talking back to Father and Father hitting her legs. V. stated that, prior to this incident, Father had never hit any of the children with a belt. The CSW was unable to interview Melanie due to her young age, but noted that Melanie showed no signs of abuse or distress.

Mother was in the restroom at the time of the incident, but stated that when she came out, she told Father to stop and asked him to leave the home to "let everything . . .

---

[1] The children's mother is not a party to this appeal.

[2] All statutory references are to the Welfare and Institutions Code.

cool down," which he did. Father confirmed the argument with Marissa, and noted this was the first time he hit any of his children with a belt. The parents were cooperative and agreed to a safety plan whereby they would not engage in corporal punishment, they would enroll Marissa in counseling, and Father would enroll in a parenting course.

After the initial interviews, as the DCFS investigation continued, Father admitted to having a criminal history[3] and using methamphetamine in the past. Father agreed to drug testing, but failed to show up for the initial test. Another test was scheduled and, on January 12, 2015, Father tested positive for high levels of amphetamine and methamphetamine. Father stated that he had not used drugs for three years, but had recently relapsed. Mother stated that she was unaware of Father's recent drug use, explaining that he never used drugs at home or around his family and she had not noticed any suspicious behavior on his part.

On January 23, 2015, the parents attended a DCFS team meeting, and Father consented to leaving the home while the children remained with Mother. Father reported that he had attended intake appointments for a parenting class and an outpatient drug treatment program.

At the February 3, 2015, detention hearing, the juvenile court released the children to Mother and ordered enhancement services for Father and monitored visitation.

In its further investigative report, DCFS re-interviewed the family members, who confirmed their earlier reports that Father had never hit the children prior to the incident with Marissa. The children also stated that they were unaware of Father's drug use before the CSW brought it to their attention in connection with this case, and had never seen their father get drunk or use any drugs. The children missed Father and wanted him to return home. Mother, for her part, emphasized that Father loved the children and was committed to his family, and had never used drugs in their home or, prior to the incident with Marissa, hit any of the children.

---

[3] Father had prior convictions for transporting drugs and a firearm possession, and in 2014, he had to register as a controlled substance offender.

3

Father was also interviewed.  DCFS stated that he was cooperative and remorseful for his drug use and for hitting Marissa, and confirmed he was receiving drug treatment services.  Father tested negative on two drug tests in February and March 2015.  Father stated that he always kept any drug use or criminal activity away from his family, noting that "I never use anything around my kids or [Mother] . . . she would never allow it and I don't want to do it.  I stay away from the house and come home when I'm sober."

In March 2015, Father was diagnosed with stage two colon cancer and underwent hospitalization and surgery.  At that time, Mother notified DCFS explaining that, due to his illness, he would miss drug tests and drug treatment therapy.  Father stated that he was "going to do what I can.  We all hope I can go home so I can see the kids every day, and we can be together again."  DCFS recommended in its report that Father be permitted to return to the family home.

On May 7, 2015, adjudication hearing, the court declared the children dependants under section 300, subdivisions (a), (b) and (j), and permitted them to remain at home with both parents under DCFS and juvenile court supervision with in-home services.  Father timely appealed.

## DISCUSSION

The court's decision relied on three statutory grounds:  (1) that Marissa "suffered, or there is a substantial risk that [Marissa or her siblings] will suffer, *serious physical harm* inflicted nonaccidentally" by Father, under section 300, subdivision (a); (2) that the children have "suffered, or there is a substantial risk that [they] will suffer, *serious physical harm* or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect" the children under section 300, subdivision (b); and (3) that a sibling (i.e., Marissa), "has been abused or neglected, as defined in subdivisions (a) [or] (b) . . . and there is a substantial risk that [the other children] will be abused or neglected, *as defined in those subdivisions,*" under section 300, subdivision (j). (§ 300, subds. (a), (b) & (j), italics added.)  Jurisdiction under these provisions requires a showing that a child either suffered "serious physical harm" or was at serious risk of so suffering.  (*In re D.M.* (2015) 242 Cal.App.4th 634, 639-640.)

4

Respondent contends that Father's drug use and the incident of Father hitting Marissa during their argument on December 13, 2014 support the court's decision. We disagree.

The record lacks any evidence that Marissa or her siblings suffered, or were at risk of suffering, any physical harm as the result of Father's use of illegal drugs.[4]  We have repeatedly held that a parent's use of drugs *alone* does not bring a minor within the jurisdiction of the dependency court.  (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003.)  (See also *In re Rocco M.* (1991) 1 Cal.App.4th 814, 817, 825–826 [mother's cocaine use standing alone was not sufficient basis for jurisdiction under section 300, subdivision (b)]; *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 59, fn. 2 [father's alcoholism alone did not support jurisdiction under section 300, subdivision (b)].)

Instead, the DCFS must present evidence of a specific, non-speculative and substantial risk to a child or her siblings of serious physical harm *as a result* of a parent's drug use.  (*In re David M.* (2005) 134 Cal.App.4th 822, 830 [jurisdiction under section 300, subdivision (b), reversed where mother had continuing substance abuse problem, but there was no evidence of a specific, defined risk of harm from mother's substance abuse].)  Here, the DCFS has failed to do so.  Indeed, the record demonstrates that the children and Mother had no knowledge of Father's drug use, saw no evidence of any drug use, and, other than the isolated incident with Marissa, Father was a loving and responsible parent.

Similarly, a jurisdictional finding cannot be based on Father's single, isolated incident of hitting Marissa.  (See, e.g., *In re J.N.* (2010) 181 Cal.App.4th 1010, 1023 [holding that dependency jurisdiction cannot be based upon a single incident resulting in physical harm absent current risk]; *In re Isabella F.* (2014) 226 Cal.App.4th 128, 131 [holding that dependency jurisdiction could not be based on a single incident of mother hitting daughter in the face, grabbing her by the neck and locking her in the bathroom].)

---

[4]      Similarly, the record lacks any evidence that the children suffered any harm based on Mother or Father's failure to supervise or protect them under section 300, subdivision (b).

DCFS failed to demonstrate that Father presented any current or future risk to his children.  Father took full responsibility for the isolated incident of hitting Marissa, agreed to attend therapy and expressed remorse for hitting his daughter.  As the court itself noted, Father has "taken full responsibility in terms of the incident, and he's . . . open to learning skills and doing things differently."

## DISPOSITION

The court's jurisdictional order is reversed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


LUI, J.

6