Filed 8/25/16  In re J.V. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re J.V., a Person Coming Under the Juvenile Court Law. | B267342 (Los Angeles County Super. Ct. No. DK07833) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. WILLIAM V., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Julie Fox Blackshaw, Judge.  Reversed and remanded with directions.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

William V. (Father) appeals from the juvenile court's dispositional orders removing his son, J.V. (Son), now age 10, from his care after it found that his sexual and live-in relationship with an underage runaway fugitive endangered Son. Father argues insufficient evidence supported the jurisdictional findings and removal order. We agree insufficient evidence supported the findings, but only insofar as the Los Angeles County Department of Children and Family Services (DCFS) pleaded them. We reverse and remand with directions.

## BACKGROUND

Son came to the attention of the DCFS on September 15, 2014, after he arrived at school with bruises on his cheek and thigh and his description of how he got them was inconsistent with the bruises' appearances. When interviewed by DCFS, Son revealed his mother, L.V. (Mother), had hit him with a belt. A forensic examination confirmed the bruise on his thigh was consistent with being struck by a belt and the bruise on his face was consistent with being slapped in the face. On October 7, 2014, the juvenile court issued a removal warrant authorizing DCFS to take Son from Mother and place him with Father. A week later, on October 14, 2014, DCFS filed a dependency petition under Welfare and Institutions Code section 300, subdivisions (a) and (b) based on Mother's physical abuse of Son; the petition also included allegations regarding Mother's abuse of Son's half sister, D.C. (Sister).[1] We do not address the allegations as to Sister because they are not at issue here.

Almost two weeks later, on October 27, 2014, law enforcement pulled Father over for running two stop signs and, after asking for his identification, discovered Father was driving on a suspended license. The officers removed Father and his passenger, A.M., a teenage female, from the car. A.M. identified herself as "Carolina V.," using Father's last name, and stated her birth date upon request. When asked who A.M. was, Father claimed she was his daughter, "Carolina V.," but provided a different birth date. Father explained the discrepancy, saying, " 'It's because she's my daughter and I spent most of

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

my life in jail, so I don't know her that well. I'm trying to be a better father now.' " A.M., however, admitted she was lying and revealed her true name and birth date. When confronted with A.M.'s admission, Father initially continued to lie, saying he did not know her name because they had just met, but later admitted he did know her name. A California Law Enforcement Telecommunications Systems (commonly known as "CLETS") search revealed A.M. had an outstanding no bail juvenile warrant for home invasion. Father then admitted he knew about A.M.'s warrant and was hiding her at his residence. The officers arrested and restrained Father.

According to one of the officers, Father asked if the officer would remove Father's cell phone from his left pocket to call his mother. The officer complied and while unlocking the unfamiliar phone, opened the camera, which he described as accidental. In an attempt to close the camera, the officer pressed on a horizontal line located in the left corner of the screen. This, however, opened a gallery of photos instead. In the gallery, the officer observed photos of what appeared to be a lingerie-clad female exposing her buttocks and A.M. performing oral sex on a man. After exiting the gallery, the officer also noticed Father's screensaver was a picture of him and A.M. kissing. Upon further questioning, A.M. admitted Father was her "boyfriend" and that they had been engaged in a sexual relationship for months. When asked if A.M. was his girlfriend, Father lied, "No, that's just a friend." After the officer revealed his discovery of the photos to Father, Father admitted A.M. was his girlfriend and they were having sex, but denied knowing her age. The officer then asked Father why he lied that A.M. was his daughter because this indicated Father knew A.M. was a minor. Father explained, " 'I didn't want to get in trouble because of her age.' " Father then admitted he was the man A.M. was performing oral sex on in the photos. The officers arrested Father for violating Penal Code section 261.5, subdivision (c), unlawful sexual intercourse with a minor.

At a hearing on November 21, 2014, DCFS "walked on" an ex parte application, requesting the court remove Son from Father under section 385. After hearing argument, the court detained Son from Father, but granted Father monitored visitation. After further investigation, on April 17, 2015, DCFS filed a final amended petition, adding additional

3

allegations against both Father and Mother. As to Father, DCFS alleged abuse under subdivisions (b) (physical harm), (d) (sexual abuse), and (j) (abuse of sibling), arguing Father's sexual abuse of A.M. and his exposure of Son to this behavior harmed and placed Son at risk.

On June 30, 2015, the court sustained the petition as to Father under subdivisions (b) and (j); it also sustained the petition as to Mother. The court did not sustain the petition as to Father under subdivision (d). The court detained Son and Sister, granted Father continued monitored visitation, and ordered reunification services for Mother and Father. Father appealed.

## DISCUSSION

On appeal, Father argues insufficient evidence supported both the jurisdictional findings and the dispositional orders.

We review jurisdictional findings and dispositional orders for substantial evidence. (*In re Jeannette S.* (1979) 94 Cal.App.3d 52, 58.) Substantial evidence, however, is not " 'any' evidence" and "must be reasonable in nature, credible, and of solid value." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) Father "has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding[s]" (*ibid.*), but if he can, the dispositional orders based on those findings are reversed. In this review, we "resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828.)

A.    **Substantial evidence does not support the jurisdictional finding under subdivision (j)**

The allegations brought under subdivision (j) are confusing, but under any reading do not bring Son under the court's jurisdiction. The allegations read: "On prior numerous occasions from 2014, [J.V.'s] and [D.C.] father, William [V.], father of child [J.V.], sexually abused an unrelated child, [A.M.], by kissing child, taking pornographic photographs of child, oral copulation of father by child, and sexual abuse of the child by placing the [V.'s] father's penis in the child's vagina. . . . The sexual abuse of the child by the [V.] father . . . endangers the child's physical health and safety and places the

4

child, and the child's siblings, [D.C.], at risk of physical harm, damage, danger, sexual abuse, and failure to protect." (Omitted portions, which the court struck, referred to Mother's culpability and did not make the language clearer.) These allegations are confusing because both sentences refer without distinction to both Son and A.M. as the "child." Due to this ambiguity, the second quoted sentence, in a literal reading, states that Father's sexual abuse of A.M. puts A.M. at risk. This type of allegation, however, is not proper under subdivision (j) because subdivision (j) concerns the risk of abuse to the *siblings* of an abused child as the result of the abuse to the abused child, not the future risk of abuse to an already abused child; in any event, it is unlikely the court intended this reading because the latter part of the second sentence refers to the child's sibling as Sister, who is Son's sibling, not A.M.'s.[2] Moreover, DCFS did not make allegations as to A.M.'s welfare in this petition, and therefore any language referring to a "child" being brought under the jurisdiction of the juvenile court must refer to either Son or Sister, not A.M.

Even generously reading the sentence to state that Father's abuse of A.M. placed Son and Sister at risk, the subdivision still does not apply because A.M. is not a *relative* of Son or Sister, nor is she included even more broadly as a subject of abuse under the petition. With A.M. not included as part of the petition, the only other possible reading is that Sister was at risk due to the abuse of Son, but this reading would make little sense because the abuse discussed described A.M., not Son. Of note, DCFS does not address on appeal whether we should affirm the orders under subdivision (j). Because A.M. is not Son's sibling and DCFS presented no evidence she is the subject of this or any other petition, the court improperly sustained the petition under subdivision (j) against Father as to Son due to Father's abuse of A.M.

---

[2] Again, for clarification, Son's father is not Sister's father.

**B.** **Substantial evidence does not support the jurisdictional findings under subdivision (b)**

Under subdivision (b), the court has jurisdiction over a child if the "child has suffered, or there is a substantial risk that the child will suffer, serious *physical* harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." (§ 300, subd. (b)(1), italics added.) Here, there is no evidence or argument Son suffered serious physical harm. Instead, DCFS alleges that Father's sexual abuse of A.M. and his exposure of Son to his "ongoing sexualized behavior" with A.M. "endangers [Son's] physical health and safety and places the child, and the child's siblings, [Sister], at risk of physical harm, damage, danger, sexual abuse, and failure to protect."

Regarding the "sexual abuse" language, as a general matter, DCFS should bring these types of claims under subdivision (d), which specifically addresses risk of sexual abuse, not subdivision (b), which addresses other types of physical abuse. In any event, DCFS attempts to elaborate this sexual abuse argument on appeal, claiming Son "was exposed [to] an environment where he could not judge the risk an adult sexual predator might pose, thus making him an easy victim." DCFS further argues regarding Son, "Father's exposing him to that [sexualized] conduct . . . is modeling and encouraging behavior that creates a great risk of harm not only to himself, but possible victims of his conduct." We generally agree, but the harm at issue in subdivision (b) is *physical* harm to *Son*. Although exposure to sexual abuse and promiscuity can indeed be harmful, DCFS provided no evidence or further argument that Father's abuse of A.M. created an actual risk to Son's current physical well-being because it groomed Son for sexual abuse or encouraged him, at age 10, to be dangerously promiscuous.

DCFS also argues on appeal that Father exposed Son to risk by harboring a felonious fugitive in his one-bedroom abode. DCFS, however, did not clearly plead this ground. The only allegation that could relate to this ground reads, "father William [V.] placed the child in a detrimental and endangering home environment in that the father allowed child [A.M.] to reside in the family home. The father shared the bedroom with

6

child and exposed him to ongoing sexualized behavior between father and child [A.M.] Such a detrimental and endangering home environment established for the child by the father endangers the child's physical health and safety and creates a detrimental home environment, and places the child at risk of physical harm, damage and danger." The second sentence describing Father's inappropriate sexual behavior with A.M. arguably modifies and limits the first sentence, which refers to A.M. living in Father's home. Although we agree harboring a fugitive is inherently dangerous, DCFS did not sufficiently plead this ground under subdivision (b).

Finally, DCFS argues that Son was exposed to a detrimental home environment due to Father's behavior. We agree, but subdivision (b) does not create jurisdiction on the grounds of a detrimental home environment alone; DCFS must show how the detrimental home environment physically endangered Son. Because DCFS did not make this showing, we will not affirm the orders on these facts as pleaded under subdivision (b).

## C.    We remand for further proceedings

Our determination that insufficient evidence supports the jurisdictional findings under subdivisions (b) and (j) as pleaded does not reflect a judgment on the merits of a potential amended petition. Father's behavior is indeed alarming. He has lied repeatedly to law enforcement and DCFS about his sexual relationship with a teenager. He blamed his abuse on the teenager, saying she lied to him about her age and " 'manipulated' " him into a relationship. He allowed this teenager to live in his one-bedroom home with his young son to hide her from arrest for a no bail felony warrant for home invasion. Son told DCFS, and Father does not deny, that at times he, Father, and the teenager laid in the same bed together where Son fell asleep. Son told DCFS he had seen Father "kiss" and "sleep" with A.M., but refused to further elaborate what he had seen transpire. Just a month after Father's arrest, Son's school psychologist reported Son has been " 'out of control' recently" and required counseling. For instance, " 'defiant' " Son has cursed at school staff, punched holes in school property, and punched vending machines. Son was also "having difficulty with his peers," including an incident where he threw food at a

7

classmate. In September 2014, Mother reported that Son has said he was going to "kill everybody" at school, threatened the principal, threw tables and chairs in a classroom, broke the fire alarm, and tried to hurt other children. Son's behavior is troubling and could be indicative of emotional effects suffered from exposure to Father's poor behavior. This collective evidence appears to be sufficient to sustain a petition on some grounds, but not under subdivisions (b) or (j), as pleaded. We remand for the court to consider an amended petition filed by DCFS, if any.

**D.     We need not reach the dispositional orders**

Because insufficient evidence supports the as-pleaded jurisdictional findings, we need not reach the dispositional orders based on those findings.

## DISPOSITION

The juvenile court's orders are reversed and on remand the court is to consider an amended petition filed by DCFS, if any.

NOT TO BE PUBLISHED.


                                                    LUI, J.

We concur:


        CHANEY, Acting P. J.


        JOHNSON, J.

8