Filed 3/25/24  In re Z.D. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| In re Z.D. et al., Persons Coming Under the Juvenile Court Law. | C098411 |
| GLENN COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.N.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. 22JP01052, 22JP01053) |

S.N., mother of minors Z.D. and A.D., appeals from the juvenile court's disposition order removing the minors from mother's custody and placing them outside

1

the home.  (Welf. & Inst. Code, §§ 300, 395.)[1]  Mother contends the juvenile court erred in failing to consider alternatives to removal.  Disagreeing, we will affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

On November 30, 2022, G.D., the father of minors, requested the assistance of the Glenn County Health and Human Services Agency (Agency) following an argument between mother and father in their home.  Father reported that he and mother fought because he believed, based on hearing but not seeing the incident, that mother hit one of the minors.  He also reported that he and mother had an argument after mother became upset when father attempted to access money from his Door Dash account.  Because there was a peaceful contact order in place following a previous domestic violence incident wherein father claimed mother beat him and "broke a belt buckle" on his back, father left the home with the children after an altercation and reported it to the Agency.  Father also indicated that he had struggled with mental health and substance abuse issues and wanted to end his relationship with mother.

Mother subsequently called the Agency and was advised that father and the minors were there.  She claimed that father had been mixing prescribed medications with alcohol, and she was concerned he was attempting to access funds to buy drugs or alcohol.  She denied any physical discipline of the minors.  That evening, when the parents met with Agency social workers for a safety planning meeting, each parent repeated their previous allegations and denied the allegations against them.  At the end of the meeting, the family agreed to a cooling-off period; the parents would both stay away from each other, and both would benefit from services such as counseling, alcohol treatment, and coparenting.  The parents also agreed to not engage in any verbal or physical altercations in front of the minors.  The Agency provided father with a hotel room in which to stay, and the minors remained with him.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

2

The following day, there was a physical altercation between mother and father at the hotel. Mother claimed that father had strangled her in view of the minors, and father was arrested. Father subsequently recanted his prior allegations about mother at an emergency child and family team meeting. Similarly, mother recanted her allegation that father strangled her.

On December 5, 2022, the Agency filed juvenile dependency petitions regarding the minors, alleging that the minors were at risk under section 300, subdivision (b)(1), failure to protect, and subdivision (c), serious emotional damage, due to repeated mutual domestic violence between mother and father.

On December 7, 2022, the juvenile court held a continued detention hearing. The social worker testified that there were several documented incidents of domestic violence between the parents. The social worker conceded the minors were in father's care at the time of the most recent incident. The social worker also conceded that father had recanted his allegations against mother. The court found that both parents had engaged in domestic violence, both parents had recorded injuries in the police reports for those incidents, and neither party stayed away from each other, despite agreeing to do so, continuing to engage in domestic violence. The court found this conduct placed the minors at risk and ordered them detained from their parents' care.

The Agency filed a jurisdiction report on December 13, 2022, recommending that the allegations of the petition be sustained. In a January 18, 2023, addendum report, the social worker reported that she had met with the parents in their home, and they had claimed there had been no domestic violence between them. In addition to the 2022 incidents that were cited in the dependency petitions, the social worker reviewed with the parents four other domestic violence incident reports made by the parents against each other in 2020 and 2021. The parents denied or minimized each incident. The social worker reported: "Although the mother and father have recanted their mutual allegations of domestic violence, there is a long history of law enforcement contact with the parents

3

regarding violence in the home." The social worker was concerned that the parents were minimizing their behaviors and not accepting responsibility for their actions.

At a contested jurisdiction hearing on January 19, 2023, the juvenile court sustained the petition as alleged.

In its January 30, 2023, disposition report, the Agency reported that the older maternal half sibling, T.N., did not feel comfortable taking placement of her brothers due to mother's behavior and because mother was abusive to T.N. as a child. T.N. opined that the minors would not be safe in mother's care. T.N. also reported that she witnessed mother physically abuse the minors by spanking and screaming at them on several occasions due to mother's frustration with the minors' developmental delays. She also witnessed domestic violence between mother and father, including father holding a gun to mother's head, mother hitting father with a car, father holding mother by the throat against the wall, and "countless incidents of hitting, punching and screaming initiated by both parties."

The disposition report further reported that the parents were both referred to mental health services, anger management, strengthening families and substance use disorder services (SUDS). Mother attended a SUDS assessment, and it was determined that she did not meet the criteria for treatment. Mother had an assessment with Glenn County behavioral health and was scheduled to attend treatment planning on January 26, 2023. Father attended his SUDS assessment and began group and individual SUDS counseling. The parents had supervised visits two times a week for two hours, and it was reported that the visits went well. In an addendum report, it was reported that on February 9, 2023, father told the social worker that he and mother had separated, and he alleged mother threatened to keep the minors from him if he disclosed domestic altercations in the home. He believed that mother was too aggressive toward their children, and she spanked them. Mother reported to the social worker that father was abusing Klonopin and Xanax because he would not follow the prescribed dosage, and she

4

asked him to leave the family home. Father agreed that he would go to an inpatient rehabilitation program.

A contested disposition hearing took place on March 2, 2023. Mother testified that she followed the November 30, 2022, safety plan, claiming that the cooling-off period did not have a specific duration. She denied having an argument in front of the minors with father at the hotel, but she claimed that she was upset because father had changed his mind after agreeing to reconcile and "keep it out of the courts," and she threatened to call the police. Mother also denied that there was any physical violence in front of the minors. She denied the allegations that she hit father with a belt and punched him in the face during a prior incident, claiming father came home from a trip with the bruises. She testified that while father was no longer living in the home, they hoped to reconcile, and she was attending behavioral and mental health counseling. Father testified that there was never any domestic violence with mother and that he made false police reports. Mother's counsel argued that there were reasonable means to protect the minors without removal and the Agency had not shown that either parent committed an act of domestic violence in front of the minors.

At the conclusion of the contested hearing, the juvenile court found that reasonable efforts were made to prevent or eliminate the need for removal of the minors from the parents. The court observed that the parents argued that because they had retracted their allegations against each other, the domestic violence did not occur, but the court found their testimony was not credible. The court further observed that the Agency's addendum reports showed that there were ongoing inappropriate communications between the parents. The court also noted that the police report regarding the hotel incident showed that there was an act of potentially lethal domestic violence (strangling) in view of the minors. The court expressed concern that the parents continued to deny and minimize their behavior. The court found that continued physical custody by the parents was likely to cause serious emotional or physical harm to the

5

minors. The court further found that out-of-home placement was necessary, and the Agency had made reasonable efforts to return the minors to the parents' care.

## DISCUSSION

Mother contends the juvenile court failed to address reasonable alternatives to removal of the minors from her care. We disagree.

To support an order removing a child from parental custody, the juvenile court must find clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1); see *In re Heather A.* (1996) 52 Cal.App.4th 183, 193; *In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) The juvenile court must also "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor" and "state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).) Courts have recognized that less drastic alternatives to removal may be available in any given case, including returning a minor to parental custody under stringent conditions of supervision by a human services agency, such as unannounced visits. (*In re Henry V.* (2004) 119 Cal.App.4th 522, 529; *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60.)

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W., supra*, 214 Cal.App.4th at p. 1163.)

"The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order." (*In re Javier G.* (2006) 137 Cal.App.4th 453, 462 [applying § 361, subd. (c) within context of a § 387 removal].)

6

When reviewing removal findings, " '[w]e review the record in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings based on the clear and convincing evidence standard.' " (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239, italics omitted; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1004-1005.) Mother and father, as the parties challenging the orders, bear the burden of showing the juvenile court's findings and orders are not supported by substantial evidence. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Here, there is sufficient evidence to support the juvenile court's finding that there were no reasonable means to protect the minors without removing them from the home. The Agency already had made extensive efforts to work with the parents without having to remove the minors following multiple incidents of domestic violence. Despite the fact that both parents had reported injuries in the police reports for several of these domestic violence incidents, the parents mutually recanted their allegations. The Agency first attempted a safety plan without removing the minors by separating the parents for a cooling-off period, but the parents failed to remain separated, leading to the strangling incident at the hotel.

In compliance with section 361, subdivision (e), which requires the juvenile court to state the facts on which the decision to remove the minor is based, the court explained that the parents' recantations of their domestic violence experiences were not credible. The court further noted that the incident in the hotel involved a potentially lethal violent act committed in the minors' presence and the parents failed to recognize that their behavior was dangerous to the minors. In light of the parents' denial and minimization of the recurring domestic violence and evidence of ongoing controlling and unhealthy communications between the parents, it was not possible to return the minors to mother's care with a safety plan. Although mother suggests close supervision would be an adequate safeguard, given the parents' pattern of behavior, involvement in domestic

7

violence, refusal to stay away from each other when separated for a cooling-off period, and lack of understanding of the risks to the minors posed by their behaviors, the high level of supervision required would not be a *reasonable* alternative to removal.

We conclude substantial evidence supports both the juvenile court's order removing the minors from the home and the court's finding that there were no reasonable alternatives to protect the minors.

## DISPOSITION

The orders of the juvenile court are affirmed.

_____/s/_____<br>
Duarte, J.

We concur:

_____/s/_____
Robie, Acting P. J.

_____/s/_____
Ashworth, J. *

---

\* Judge of the El Dorado County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.