Filed 8/28/24  In re W.D. CA3

NOT <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re W.D., a Person Coming Under the Juvenile Court Law. | C099599 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.D.,<br><br>Defendant and Appellant. | (Super. Ct. No. STK-JD-DP-2023-0000069) |

A.D., father of minor W.D., appeals from the juvenile court's jurisdictional and dispositional orders.  (Welf. & Inst. Code, §§ 300, 395.)[1]  Father contends that the juvenile court's exercise of jurisdiction over minor is not supported by substantial evidence and that the court erred in removing minor from his custody.  We affirm the orders.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

On February 16, 2023, the San Joaquin County Human Services Agency (Agency) filed a juvenile dependency petition regarding the three-month old minor, alleging a failure to protect under section 300, subdivision (b)(1). The petition alleged that mother, N.P., tested positive twice for benzodiazepines while minor was in her care. It alleged that mother shook, pinched, and screamed at minor while he was crying. It further alleged that mother had a long history of substance abuse issues and had failed to rehabilitate. With respect to father, the petition asserted that he had an extensive history of methamphetamine use that impaired his ability to care for minor and that he had failed or refused to rehabilitate.

The Agency's jurisdiction and detention report detailed information concerning mother's care of minor. Minor was living with mother at a shelter with a residential program for substance abuse treatment. A mental health worker visited mother and reported concerns about her erratic behaviors. It was reported that mother was seen shaking and pinching minor because he was crying. The report also stated that, three weeks earlier, mother had left the shelter to obtain medical care at a local hospital. After being treated, she did not return to the shelter but instead asked father to pick her up and stayed out overnight. After returning to the shelter, mother tested positive for benzodiazepines. The social worker suspected that mother received drugs from father and that her erratic behaviors were related to her recent drug use.

In May 2022, when she was pregnant with minor, mother tested positive for methamphetamine and other drugs. Mother also had an open case with child protective services related to her other children.

When interviewed by a social worker, mother stated that her drugs of choice were methamphetamine and alcohol but that she had not used in nine months. Mother told the social worker that father had a history of methamphetamine use but was not using drugs

2

at that time.  She said that she wanted to leave the shelter and live with father.  She was unhappy that the Agency would not allow her or minor to reside with him.

The juvenile court held an uncontested detention hearing on February 17, 2023.  The court found a substantial risk of harm to minor and ordered him detained from his parents' care.

At the March 21, 2023, contested jurisdictional hearing before the juvenile court, father's counsel argued that the only allegation in the Agency's petition as to him was related to his history of methamphetamine use; it did not allege current use.  Counsel represented that father had not used any drugs since 2016 and that he wished to have the minor released to his care and custody.  The Agency informed the court that mother was then residing with father, which presented concerns.  The court denied father's request without prejudice and continued the jurisdictional hearing.

At the July 28, 2023, continued jurisdictional hearing, both mother and father testified.  Mother testified that she was aware of father's history of substance abuse but was unaware of the last time that he used drugs.  She denied using drugs with father.  She said that after minor was detained, she left the rehabilitation shelter program and went to live with father.

Father testified that his methamphetamine usage had been on and off since he was a teenager but increased exponentially in 2010.  He continued to use heavily until 2019 when he had a heart attack and used occasionally after that.  He stated that he stopped using methamphetamine altogether in 2021.

During his testimony, father was asked about a drug assessment conducted in August 2022 in which he stated that he had last used methamphetamine in May 2022.  He testified that the assessment report was inaccurate.  He also testified that he had not received treatment for his substance abuse but had stopped using drugs on his own.

Father's counsel asked the juvenile court to strike the allegation in the petition as to father. Counsel maintained that while father had a history of substance abuse, he had rehabilitated and should be treated as a nonoffending parent.

Counsel for both minor and the Agency urged the juvenile court to assume jurisdiction over minor. The Agency expressed concern about parents' minimization of their substance abuse and changing stories regarding the last dates of use, particularly in light of father's admitted extensive history of methamphetamine abuse. The Agency also noted that father had not participated in a substance abuse program and admitted to using methamphetamine as recently as 2022. The Agency argued that he was not a nonoffending parent on that basis and that both father and mother needed to engage in a case plan for reunification.

The juvenile court found that the Agency had met its burden, sustained the allegations of the petition, took jurisdiction over minor, and ordered reunification services for both parents. It found that mother had spent a significant amount of time struggling with substance abuse, noting the number of Agency interventions related to her struggle. It observed that she had enrolled in several treatment programs without completing them, had tested positive while in a residential rehabilitation program, and had left the program to live with father. As to father, the court found that there was a risk to minor based on father's long-term drug use and that this risk was magnified by the fact that mother had moved in with him after failing to complete her treatment program. It noted that father minimized the risk that he would experience a relapse and denied the need for help to avoid one. The court expressed concern that father lacked the appropriate education to identify problems arising from mother's substance abuse and to protect minor.

The Agency submitted its disposition report on September 7, 2023. The report stated that mother had not stabilized her mental health and substance abuse issues and that there was an ongoing concern about father's unresolved substance abuse. It was

reported that mother and father had married and resided together; their housing, however, was unstable. The Agency made referrals for father to parenting classes, anger management classes, and individual counseling, but father said that he was unable to attend due to his work schedule and that he did not need the services. The Agency saw father's engagement with services as "nonexistent." The report observed that father participated in random drug testing and tested clean twice after the jurisdictional hearing. But father's inconsistencies about his last drug usage made it "questionable as to when [he had] actually abstained from illegal substances." Both parents were provided with reunification case plans, which consisted of individual counseling, parenting classes, and substance abuse services.

At the September 12, 2023, dispositional hearing, father and mother each submitted on the Agency's disposition report. They also asked the juvenile court to transfer the case to Stanislaus County. The Agency also recommended transferring the case, as father and mother were residing at a shelter in Stanislaus County and intended to remain there.

The juvenile court adopted the dispositional findings and orders proposed in the Agency's report. The case was subsequently transferred to Stanislaus County.

Father filed a timely notice of appeal challenging the juvenile court's jurisdictional and dispositional orders.

DISCUSSION

I.

Father contends that there was insufficient evidence to support the juvenile court's jurisdictional findings as to him.

We consider first whether we have jurisdiction to address father's contention. Because dependency jurisdiction " 'attaches to a child, not to his or her parent,' " it is " ' "immaterial" ' " that one jurisdictional finding is inappropriate where another such finding is " ' "unassailable." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 283.) Accordingly,

5

where, like here, "jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot." (*Ibid.*)

Father recognizes this principle but asks that we exercise our discretion to address his challenge to the juvenile court's jurisdictional findings because, he argues, those findings prejudiced him with respect to the court's dispositional order. We agree that it is appropriate for us to address the merits of father's challenge. As explained above, the juvenile court's dispositional order treats father as an offending parent. The court's findings as to jurisdiction with respect to father thus impacted its dispositional decision. (See *In re S.F.* (2023) 91 Cal.App.5th 696, 712 [reaching merits of parent's challenge to jurisdictional findings that served as basis for dispositional order] (*S.F.*).)

We conclude, however, that father's claim fails on the merits. To obtain a jurisdictional determination under section 300, subdivision (b)(1), a child welfare agency must "prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601.) Only a substantial risk that the child will be abused or neglected is required. The "court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*Id.* at p. 602.) In evaluating whether there is a substantial risk, a parent's " ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' " (*Ibid.*) There " ' "must be some reason beyond mere speculation to believe the alleged conduct will recur." ' " (*Ibid.*)

We review a juvenile court's jurisdictional findings for substantial evidence. (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.) We review the record "in the light most favorable to the challenged order, resolving conflicts in the evidence in favor of that order, and giving the evidence reasonable inferences. Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from

6

evidence are the domain of the trial court, not the reviewing court." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450-451.)

We conclude that there is substantial evidence to support the court's jurisdictional findings as they pertain to father. The minor was initially removed from his parents' custody because of mother's substance abuse, erratic behaviors, shaking and neglecting of minor, and father's extensive history of substance abuse. The record shows that mother had a separate open dependency case and was not allowed to reside with father. After minor was detained, mother left the substance abuse treatment program to live with father, and their housing became unstable.

At the same time, father admitted to long-term and fairly recent methamphetamine use. He did not obtain treatment for his substance abuse and made inconsistent statements about when he stopped using. Mother and father shared the same drug of choice (methamphetamine); and after mother left the shelter and stayed with father overnight, she tested positive for drugs. Although he later denied it, father stated in a drug assessment that he had used methamphetamine at a time (May 2022) when mother was pregnant with minor and aware of her pregnancy; and mother herself tested positive for methamphetamine and other drugs at that time.

Father is correct that substance use, standing alone, is not sufficient to establish jurisdiction, but "[c]ourts may in appropriate circumstances discern an inability to provide regular care and a substantial risk of serious physical harm or illness from the evidence that has been introduced in a particular case, including evidence relating to substance abuse, and the reasonable inferences that can be drawn from this evidence." (*In re N.R.* (2023) 15 Cal.5th 520, 558-559.) In this case, the record before the juvenile court was sufficient for the juvenile court to discern a substantial risk to minor. As noted, there was evidence that father provided inconsistent accounts about his own drug use, enabled mother's use of drugs at a time when she was responsible for minor's care, allowed mother to live with him after she left her treatment program, and lacked the

7

ability to identify risks associated with mother's substance use. These facts and the reasonable inferences that may be drawn from them were sufficient to support the juvenile court's jurisdictional finding with respect to father. (*In re T.V.* (2013) 217 Cal.App.4th 126, 135 [reasoning there was a substantial risk of harm to a minor where, among other things, the father "was aware of [the mother's] substance abuse but nevertheless allowed her in the home"].)

Father relies heavily on *S.F.*, *supra*, 91 Cal.App.5th 696, but we do not see the facts in that case as analogous. In *S.F.*, the father had participated in drug treatment and reported without contradiction that he had been sober for two years. (*Id.* at pp. 717-718.) There was also no evidence that he had facilitated the mother's drug use while she was caring for their child. On the different facts here, we conclude that the juvenile court had an adequate basis for assuming jurisdiction over minor.

II.

Father next challenges the juvenile court's dispositional order, arguing that the evidence was insufficient to remove minor from his care and that the court failed to consider alternatives to removal.

Before removing a child from parental custody, the juvenile court must find clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subds. (c)(1), (d); see *In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) The juvenile court must also "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor" and "state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).) Courts have recognized that less drastic alternatives to removal may be available in an appropriate case, including returning a minor to parental custody under

8

stringent conditions of supervision by a human services agency, such as unannounced visits. (*In re Henry V.* (2004) 119 Cal.App.4th 522, 529; *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60.) In addition, section 361.2, subdivision (a) requires the juvenile court to place a dependent child with a noncustodial, nonoffending parent who requests custody, unless the placement would be detrimental to the child.

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W.*, *supra*, 214 Cal.App.4th at p. 1163.)

On appeal, " '[w]e review the record in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings based on the clear and convincing evidence standard.' " (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239, italics omitted, disapproved on another ground in *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 631, fn. 8; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1004-1005.) Father, as the party challenging the order, bears the burden of showing that the juvenile court's findings and orders are not supported by substantial evidence. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

As to father, the juvenile court found by clear and convincing evidence that placement with him would create a substantial danger to minor and that there were no reasonable means short of removal to protect minor. We conclude that the record contains sufficient support for this finding. As discussed above, father had an extensive history of substance abuse, and there was evidence that he enabled mother's drug use while minor was in her care. In addition, by the time of the disposition hearing, father had failed to participate in the services to which he had been referred. And because

9

father resided with mother, the juvenile court could not place minor with father without also placing him with mother.

Pointing again to *S.F.*, *supra*, 91 Cal.App.5th 696, father contends that the juvenile court failed to consider alternatives to removal, including having mother live separately from him. In *S.F.*, the father resided apart from the mother. (*Id.* at pp. 723-724.) In contrast here, father and mother lived together, and we are aware of no evidence in the record that he intended to reside separately from her. Substantial evidence supports both the juvenile court's order removing minor from father's care and the court's finding that there were no reasonable alternatives to protect minor.

DISPOSITION

The orders of the juvenile court are affirmed.


                                          /s/
                                          FEINBERG, J.



We concur:



 /s/
EARL, P. J.



 /s/
ROBIE, J.


10