Filed 11/29/21  In re M.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re M.S. et al., Persons Coming Under the Juvenile Court Law. | C092970 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. Nos. JV2020167-1, JV2020167-2, JV2020167-3) |
| Plaintiff and Respondent, | |
| v. | |
| D.S., | |
| Defendant and Appellant. | |

The juvenile court exercised dependency jurisdiction over three minor siblings and removed them from the custody of their parents.  Appellant D.S., mother of the siblings (mother), challenges the sufficiency of the evidence supporting the court's exercise of jurisdiction, and also challenges the sufficiency of the evidence supporting the removal of the children from her custody.

1

We conclude substantial evidence supports dependency jurisdiction as well as the court's removal order. The juvenile court's orders are affirmed.

## BACKGROUND

Mother, an enrolled member of the Cherokee Nation of Oklahoma, and Gaylon M. (father), share two children together, two-year-old Z.M. and nine-month-old G.M. Mother also has four-year-old M.S. from a previous relationship.[1]

On August 9, 2020, the Yolo County Health and Human Services Agency (Agency) received a referral about the family. It was reported that mother and father were arrested for misdemeanor child endangerment due to the family living in their unsanitary car filled with trash where the three children had access to medication bottles and a container of gasoline. The parents were booked and released, but law enforcement took all three children into protective custody. The original report to law enforcement came in after someone reported seeing mother hit M.S. on the chest, arm, and head.

Two days later, on August 11, the Agency filed a petition in the juvenile court alleging the children came within Welfare and Institutions Code section 300, subdivision (b)(1).[2] The petition alleged mother and father failed to provide adequate food, clothing, and shelter for all three children, placing them at substantial risk of serious physical harm, and recounted the circumstances of the family living in an unsafe and unsanitary car with excessive amounts of food scraps and trash scattered throughout. The family was found sitting in their car with the windows rolled up with the outside temperature at nearly 100 degrees; only the driver's side door was open. There was no food, formula, or diapers for the children, and the air conditioning did not work. A filled gasoline

---

[1] Father was found to be the presumed father of Z.M. and G.M. Following a paternity hearing regarding M.S., father and Drake S. were both found to be her presumed fathers. Neither father nor Drake S. has appealed.

[2] Further undesignated statutory references are to the Welfare and Institutions Code.

container was found inside the car, which was emitting fumes into the air. It also alleged the family had an open child protective services (CPS) case in Missouri due to an unsanitary home, domestic violence, and substance abuse concerns.

Mother told the investigating social worker that the family recently moved to California from Missouri where they had a voluntary case with child protective services. Although they had been in California about one month, they had been unable to obtain stable housing. Mother said the children had eaten food about 20 minutes before officers had arrived and arrested her and father. She usually fed all of the children McDonald's, chips, and ice cream.

Father told the social worker that he wanted to return to Missouri and that his family was not in a position to help with the children. He reported that he used marijuana and mother took pills, although he did not identify the type of pills.

A Missouri social worker confirmed the family had an open child protective services case when the family left the state. The voluntary case was based on concerns about an unsanitary home, domestic violence, and substance abuse. The child welfare agency was considering removing the children when the family fled and their whereabouts were unknown.

The parents submitted on detention, and the court detained all three minors at a hearing on August 13, 2020. The court ordered supervised visitation and set a jurisdiction hearing the following month. Mother offered to voluntarily drug test before the jurisdiction hearing.

At the September jurisdiction hearing, father was not present because he was in custody in Missouri.[3] According to the jurisdiction report, mother had called father's probation officer in Missouri and reported that the babies were going hungry and that

---

[3]    Father was on felony probation in Missouri for burglary and was arrested and extradited in August 2020.

3

they had no money.  The maternal grandmother also reported that the children had been placed with her by the Missouri CPS for three or four days, but the parents took the children to California right after they were returned to their custody despite being told not to go.  She further reported that the parents used drugs in front of the children.

During the hearing, mother moved to represent herself, but the court denied the motion.  Mother's counsel then requested a contested jurisdictional hearing, and a contested paternity hearing as to M.S.  The Agency requested that the court order mother to drug test.  The court declined to order mother to drug test before deciding jurisdiction, and mother declined to voluntarily drug test.  The court set the matter for a contested jurisdiction and paternity hearing later that month.

At the contested hearing, mother's counsel requested to continue the matter for a combined jurisdiction and disposition hearing to first determine whether the case should be handled in Missouri rather than California.  According to a tribal representative of the Cherokee Nation of Oklahoma, mother was an enrolled member of the tribe, the children were eligible for enrollment, and the tribe intended to intervene.  The court found that the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) applied to all three minors, and set the matter for a combined contested hearing on jurisdiction, disposition, and paternity in October 2020.

At the hearing on October 13, 2020, the court found father and M.S.'s biological father to be presumed fathers.  The court continued jurisdiction and disposition.[4]

---

[4]     Prior to the hearing, it was determined that California was the appropriate state to exercise jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code, § 3400 et seq.) because, although the family had an open CPS case in Missouri, the Missouri court was not yet involved as the family had fled the state prior to the case being filed with the court.

At the continued hearing two days later, the Agency submitted a jurisdiction report, ICWA report,[5] and disposition report for the court's consideration.[6] The lengthy Missouri CPS records as well as prior criminal records for the parents were attached to the disposition report. The parties and court agreed to continue disposition, but proceed with jurisdiction and paternity.

The Agency requested the court sustain the petition allegations because the unsafe and unsanitary conditions the children were exposed to while living in their car was indicative of a significant ongoing problem as evidenced by the family's past CPS history in Missouri where the children were living in a squalid home with no utilities, no food, and no provisions. The Agency also noted that there was evidence of domestic violence and drug use in Missouri,[7] and that the parents had exposed the children to a dangerous situation by staying with strangers in California.

While mother reported that she was employed and living with her employer, her income was insufficient to cover her $1,500 monthly rent payment. And, although mother provided a copy of her lease agreement, she refused to provide information about her employment except to say that she was "volunteering" and that she "get[s] paid."[8]

---

[5] The ICWA report is not contained in the record.

[6] Without her counsel's knowledge, mother personally submitted a response to the jurisdiction report, affidavit of show of cause proof of claim demand and contract, request for dismissal, and declaration of facts, disputing factual statements in the police report and detention report.

[7] Both mother and father tested positive for methamphetamine twice in June 2020 while in Missouri.

[8] Mother's boss explained that they lived in a house owned by someone running a "business" finding people from around the country and offering them housing in a "dormitory" in exchange for work. Mother's boss said the people were selling DirectTV and other services, but then later stated that the business, which mother supposedly worked for, had closed down. Mother's boss admitted that her own children had been

She did not know how much she was getting paid, however. Mother also refused to drug test or to voluntarily participate in any services.

Counsel for the children and M.S.'s biological father joined in the Agency's arguments and asked the court to sustain the petition. The Cherokee Nation tribal representative also recommended that the court take jurisdiction, but believed that family maintenance, rather than family reunification, was more appropriate at disposition.

Mother's counsel requested that the court decline to take jurisdiction and instead dismiss the case because the specific circumstances that supported detention were no longer applicable because mother had a job, lived with her employer, and produced receipts to show she had purchased food for the children. The disposition report noted the social workers had completed a home assessment and found that the home was appropriate except for a few safety modifications that were needed, such as putting a lock on a storage room door and fixing broken furniture. While mother's counsel acknowledged that she had a positive drug test in Missouri, she argued there had not been any positive drug tests in California and no evidence of substance abuse. Father joined in mother's arguments.

The court sustained the petition as amended,[9] finding that the children were at a substantial risk of harm from mother and father. The court found that while assessing whether there was a current substantial risk of harm to the children, it could not ignore what had happened in the past. According to the court, the reports showed the children were previously in an unsafe living environment in Missouri, which continued when they left the state after a CPS case was opened and came to California where they were living

_____

removed from her care and raised by her parent. Neither mother nor her boss had information on the other family that was also moving into the home.

[9]     The petition was amended to refer to father as the "presumed" rather than "alleged" father.

in an unsanitary car filled with trash and other dangerous items. Such evidence showed mother continued to engage in a lifestyle that did not provide adequate food, clothing, and shelter for the children. Because there was minimal information regarding mother's living arrangements with her "boss," the court declined to find that mother had sufficiently remedied the living situation. The court ordered mother to drug test, and then set the matter for a contested disposition hearing in November 2020.

At the contested disposition hearing on November 3, 2020,[10] the Agency submitted the disposition report as well as an addendum report for the court's consideration, and recommended that the children be continued as dependents with reunification services offered to the parents. The addendum report documented the Agency's repeated efforts to arrange services and drug tests for mother, and her failure to test or engage in any services. The Agency had been unable to schedule a follow up visit to mother's home to determine if the required modifications had been made or if the home was presently safe and appropriate for the children. Until mother addressed issues related to stable housing, coping skills, life skills, parenting skills, random drug testing, and substance abuse treatment if she tested positive, the Agency believed the children would not be safe in her care.

The Agency called the Cherokee Nation tribal representative as an ICWA expert, and she testified that the court should continue the children as dependents and offer the parents reunification services. While she had initially recommended the case should be one of family maintenance, given mother's conduct throughout the proceedings the tribe had changed its recommendation to one of family reunification. It was the tribe's position that mother was potentially hiding a drug problem because she refused to test or engage in any services. In the tribe's opinion, active efforts had been made to maintain

---

**10**     The court denied mother's request to relieve her appointed counsel and to act on her own behalf.

7

the children in the home, but given the circumstances, the tribe recommended that the children remain in custody, that mother be offered services, and that the court order her to comply with the court's order in the case plan.

Latishia Casey testified on mother's behalf. Casey had known mother for a little over a month, and mother helped her with clerical duties in Casey's accounting business. Mother worked three to four days a week, although the hours varied because mother was preoccupied with personal matters. Mother lived with Casey's daughter.

The Agency requested that the court continue the children in out-of-home placement and offer family reunification services to all three parents. The Agency noted that mother had not cooperated with or engaged in any services, that she was asked to drug test eight times, but never did, and that she had mental health issues that made her unstable.

Mother's counsel urged the court to return the children to mother's custody, arguing she had stable housing and claiming that she would participate in services if the court ordered the children returned to her. She requested family maintenance services. Mother addressed the court, declaring the children suffered from separation anxiety and were depressed. M.S.'s biological father requested an ICPC[11] report to place M.S. in his care, and services were requested for father even though he was incarcerated.

Counsel for the children joined in the Agency's request for family reunification services, arguing mother's actions showed she was unstable and a potential flight risk if the children were returned to her care. She requested a psychological evaluation to identify mother's mental health issues.

The court found by clear and convincing evidence that the Agency had met its burden justifying removal, and that it currently was not safe to return the children to their

---

[11] Interstate Compact on the Placement of Children. (Fam. Code, § 7901.)

parents' care. In its written dispositional findings and orders, the court found clear and convincing evidence of the circumstances stated in section 361, subdivision (c)(1) regarding mother. That specific statutory provision provides that a child may be removed from parental custody where there is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the children if they were returned home, and that there were no reasonable means by which the children's physical health could be protected absent removal from their parents' custody. (§ 361, subd. (c)(1).) The court further found that reasonable efforts were made to prevent or eliminate the need for removal from the home, and that as Indian children, active efforts were made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, which proved unsuccessful.

Although the court checked the box in section three on the preprinted Judicial Council dispositional order form stating that M.S. was an Indian child, the court did not further fill in the section, which refers to whether a qualified expert testified (which she did), and whether continued parental custody would cause serious emotional or physical damage to the child. For Z.M. and G.M., the court checked the box in section three that there was reason to know that they were Indian children, but again did not fill in the remainder of the section.

The court ordered family reunification services for all three parents. Mother was ordered to participate in a psychological evaluation, and the court set a six-month family reunification review hearing. Mother appealed the jurisdiction and disposition orders.

## DISCUSSION

## I

### *Jurisdictional Findings*

Mother contends there was insufficient evidence to support the juvenile court's jurisdictional finding under section 300, subdivision (b). She argues that the Agency

9

failed to prove that her children were at a substantial risk of serious physical harm at the time of the jurisdiction hearing.

In a dependency proceeding, the social services agency must prove by a preponderance of the evidence that the minor who is the subject of a dependency petition comes within the juvenile court's jurisdiction. (§ 355, subd. (a); *In re Isabella F.* (2014) 226 Cal.App.4th 128, 137.) As relevant here, section 300, subdivision (b)(1) authorizes dependency jurisdiction when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse."

We review a jurisdictional challenge for substantial evidence, asking whether the record contains evidence that is reasonable, credible, and of solid value sufficient for a reasonable trier of fact to find jurisdiction. (*In re Isabella F., supra*, 226 Cal.App.4th at p. 137.) In doing so, we consider the record as a whole, resolving all conflicts and drawing all reasonable inferences to support the juvenile court's findings; we may not reweigh the evidence or consider the credibility of witnesses. (*Id.* at pp. 137-138.) We affirm the order even if other evidence supports a different finding. (*Ibid.*)

With the applicable standard of review in mind, we turn to mother's argument that there was insufficient evidence to support the jurisdictional findings that she endangered the children's physical health and safety and placed them at substantial risk of serious physical harm by failing to provide adequate food, clothing, and shelter. At the time of the jurisdictional hearing, she argues that she had secured appropriate housing, had a job and income to support her children, and had the necessities for her children such as beds, clothing, and food. Thus, her prior history with an unsanitary home, substance abuse, and domestic violence was not sufficient to justify exercising dependency jurisdiction because there was no reason to believe that such past events would reoccur. We disagree.

10

As mother concedes, the juvenile court could properly consider past events when deciding whether the children were currently in need of the court's protection. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824, abrogated on other grounds by *In re R.T.* (2017) 3 Cal.5th 622, 628-629.) That past included an open CPS case in Missouri that stemmed from mother and father providing an uninhabitable home for the children that was filthy and lacking basic necessities, coupled with positive drug tests for methamphetamines and evidence of domestic violence. Upon arriving in California, they continued the pattern by living in their unsanitary car filled with trash, a filled gasoline can, and medication bottles that were accessible to their three young children. They had no money, no food or diapers, and no plan on how to care and provide for their children.

Contrary to mother's contention, the court could reasonably conclude that significant issues still remained regarding mother's ability to provide adequate housing and necessities for her children even though she had rented rooms in a house and had obtained a job at the time of the jurisdiction hearing. Given the evidence presented, the stability of mother's housing and employment was questionable. Mother had refused to provide further information about the nature of her employment, initially disclosing only that she "volunteered" and "get[s] paid." She could not tell the social worker how much she earned, and, according to her "boss," the business mother supposedly worked for had been shut down, and mother did not even earn enough to cover her $1,500 monthly rent. The likelihood that mother would not be able to afford her rental over time and properly provide for the children was more than a speculative possibility, especially since she was unable to maintain a habitable home or properly provide for the children in Missouri where she lived in a home rent free.

Mother had consistently refused to engage in services, including housing services that might have helped alleviate the problems that gave rise to the allegations in the petition. She had also refused to drug test although the record shows she twice tested positive for methamphetamine shortly before fleeing Missouri for California. Based on

11

the record before the juvenile court, substantial evidence supports the juvenile court's jurisdictional findings that there was a substantial risk that the children would suffer serious physical harm as a result of mother's failure or inability to protect and provide for them if in her care.

## II

### *Dispositional/Removal Findings*

Mother contends insufficient evidence supported the juvenile court's disposition order removing the children from her custody. She reasons that while she refused to engage in any services prior to the court taking jurisdiction over the children, she was willing to participate in services if they were returned to her care. Thus, in her view, there were reasonable means to protect the children without removing them from her care. We disagree.

Before removing a minor from his or her parent's custody, the court must find, by clear and convincing evidence, that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1); *In re T.W.* (2013) 214 Cal.App.4th 1154, 1163; *In re Javier G.* (2006) 137 Cal.App.4th 453, 462.)

Under ICWA, before an Indian child is placed in foster care, the juvenile court must find by clear and convincing evidence, based on testimony from a qualified expert witness, that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. (25 U.S.C. § 1912(e) ["[n]o foster care placement may be ordered in [any involuntary proceeding in a State court] in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child"]; *In re*

12

*Autumn K.* (2013) 221 Cal.App.4th 674, 703.) "[T]he evidence must show a causal relationship between the particular conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage to the particular child who is the subject of the child-custody proceeding." (25 C.F.R. § 23.121(c) (2016).) Without such a causal relationship, evidence that shows only the existence of community or family poverty, isolation, single parenthood, custodian age, crowded or inadequate housing, substance abuse, or nonconforming social behavior does not by itself constitute clear and convincing evidence that continued custody is likely to result in serious emotional or physical damage to the child. (25 C.F.R. § 23.121(d) (2016).)

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent." (*In re T.W., supra*, 214 Cal.App.4th at p. 1163; *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60.) It is not required that the parent be dangerous or that the child have been harmed before removal is appropriate. (*In re T.W.*, at p. 1163.) "The focus of the statute is on averting harm to the child." (*Ibid.*)

In this case, substantial evidence supports the juvenile court's finding by clear and convincing evidence that returning the children to mother's care would likely result in serious physical or mental detriment to them. The court reasonably could disbelieve mother's representation at the disposition hearing that she had stabilized her life and was now willing to participate in services. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193 [appellate court reviews disposition order findings for substantial evidence; issues of fact and credibility are the province of the trial court], abrogated on other grounds by *In re R.T.* (2017) 3 Cal.5th 622, 628.) The record showed mother had previously offered to drug test for the Agency, but then refused to do so. And, as the court noted, mother also refused to engage in any services, refused a Child Family Team meeting, and failed to open up her home to confirm that it was currently a habitable and nondangerous living

13

environment for the children. Based on mother's conduct and refusal to engage in a plethora of services that could have alleviated the problems that prompted judicial intervention, the tribal representative changed her recommendation from family maintenance to family reunification. The tribe believed mother may be hiding a drug problem and it was not safe to return the children to her care.

To the extent mother argues that the court failed to expressly find under ICWA that allowing the children to remain in her custody was likely to result in serious emotional or physical damage to them (25 U.S.C. § 1912(e)), such a finding is implicit in the court's statements during the disposition hearing as well as in the written dispositional order. The court expressly found, by clear and convincing evidence, "that the [A]gency has met that burden, that currently it is *not safe* for these children to be returned to the care of their parents." The written dispositional order specifically found that the circumstances described in section 361, subdivision (c)(1) applied to mother -- meaning that the court found there was "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home." (§ 361, subd. (c)(1).) Such a finding was based in part on the expert opinion of the Cherokee Nation tribal representative who testified at the contested disposition hearing. Given the above findings, the failure to completely fill in box 3 regarding the ICWA detriment finding on the preprinted dispositional order form appears to be an oversight. Under these circumstances, the record is adequate to support an implied finding of detriment to return the children to mother under ICWA (25 U.S.C. § 1912(e); *In re A.C.* (2015) 239 Cal.App.4th 641, 656 [appellate court found record adequately supported implied finding of detriment]), and to show a causal relationship between the particular conditions in mother's life and home and the likelihood that continued custody of the children would result in their serious emotional or physical damage.

## DISPOSITION

The juvenile court's jurisdiction and disposition orders are affirmed.


/s/
Hoch, J.


We concur:


/s/
Mauro, Acting P. J.


/s/
Krause, J.

15